# EXHIBIT 1

Ruthless Pictures, LLC
2069 ½ Ivar Avenue
Los Angeles, CA 90068

As of March 20, 2013

Damien Leone
94 Redwood Avenue
Staten Island, NY 10308

Re:     <u>TERRIFIER and THE 9TH CIRCLE/ Assignment Agreement</u>

The following shall constitute the agreement ("Agreement") between Ruthless Pictures, LLC (herein called "Company") and Damien Leone ("Owner") in connection with the motion picture shorts presently entitled "TERRIFIER" and "THE 9TH CIRCLE" (the "Pictures"). For good and valuable consideration, receipt of which is hereby acknowledged, and in consideration of the mutual covenants and agreements herein set forth, the parties hereto hereby agree as follows:

1.     <u>CONDITIONS PRECEDENT</u>: This Agreement and all of Company's obligations hereunder are subject to satisfaction of the following conditions precedent:

    (a)     Signature by Owner and delivery to Company of this agreement; and

    (b)     Company's receipt and approval of all chain-of-title documentation to the Property.

2.     <u>PURCHASE PRICE</u>: Company is irrevocably vested in all of the Rights transferred hereunder as defined in Paragraph 3 below and all promises, representations and warranties made by Owner hereunder in consideration of the payment of the sum of Five Thousand Dollars (USD$5,000) which shall be deferred and paid as follows:

    (a)     Fifty percent (50%) thereof upon delivery of the completed Picture to the distributor; and

    (b)     Fifty percent (50%) thereof upon the date of the initial commercial release of the Picture.

3.     <u>GRANT OF RIGHTS</u>:

    (a)     The term "Property" shall mean, collectively:

        (i)     The Pictures and any and all material (collectively, the "Underlying Material") in connection with the Pictures, including, without limitation, the screenplay, the title, themes, stories, dialogue and all of the other contents thereof, and the characters therein, and all translations, adaptations, and versions thereof, whether now existing or hereafter created; and

(ii)   Any and all agreements, assignments, instruments and other documents heretofore made pursuant to which services are to be rendered, and/or material furnished in connection with any and all motion pictures or other productions to be based in whole or in part on the Underlying Material or which transfer rights in and to the Underlying Material (collectively, the "Underlying Agreements").

(b)   For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Owner hereby sells, grants, conveys and assigns to Company exclusively, in perpetuity and throughout the universe, the entire copyright and all right, title and interest in the Property (the "Rights"). Without limiting the generality of the foregoing, the Rights in the Property herein granted include:

(i)   Audiovisual Works:  The right to produce audiovisual works of all types now known or hereafter devised, and sequels thereto and remakes thereof and all other types of derivative works based thereon, intended for exploitation in any medium and delivery by any means or medium, now known or hereafter devised (including by way of illustration only, any form of theatrical, television, non-theatrical, home video, internet, interactive or video-on-demand exploitation) and all music and music publishing
rights, soundtrack album and phonograph record rights, merchandising rights (including, without limitation, the exploitation and/or licensing of characters and other elements of the Property for all types of goods, services and theme park and other types of attractions), publishing rights, radio rights, stage rights, and promotional and advertising rights.

(ii)   Copyright/Exploitation Rights:  With respect to works produced pursuant to the rights granted in Paragraph 3(a) above, all copyrights, neighboring rights, trademarks and any and all other ownership and exploitation rights in the Property now or hereafter recognized in any and all territories and jurisdictions (including by way of illustration only, reproduction, distribution, adaptation, performance, fixation, rental and lending rights, exhibition, broadcast and all other rights of communication to the public) and the right to secure copyright and trademark registration and protection thereof in all countries and territories where such protection is available, in Company's own name or otherwise, and the right to exploit such works in all media, markets and languages and in any manner now known or hereafter devised (including, without limitation, in the theatrical, non-theatrical all forms of television and home and electronic video media) and to exploit the phonograph record, merchandising, (including, but not limited to, games in all formats, media and platforms now known or hereafter devised), CD-Rom, interactive, music publishing, live stage, theme park, studio tour, print publication, still photograph and artwork, film clip and advertising, "making of," promotional and publicity rights in such works and in all materials contained therein.

(iii)   Alteration Rights:  The right to change, add to, delete or take from, translate, or otherwise modify the Property in any manner Company may in its discretion determine in connection with the Pictures and other works that will embody all or part of the Property.  To the fullest extent allowable under applicable law, Owner hereby irrevocably waives or assigns to Company, on behalf of Owner and Owner's heirs, executors, administrators and assigns, all moral rights or so-called "droit moral" or any  similar laws or legal principles, including, without limitation, rights of integrity and paternity.  Owner agrees on behalf of Owner

2

and Owner's heirs, executors, administrators and assigns, not to institute, support, maintain or permit directly or indirectly any litigation or proceedings instituted or maintained on the ground that Company's exercise of its rights in the Property in any way constitutes an infringement or violation of any moral rights or droit moral, or is in any way a defamation or mutilation of the Property, or any part thereof, or contains unauthorized variations, alterations, modifications, changes or translations.

(iv)    <u>General Public Rights</u>:   The rights herein granted to Company are in addition to, and this Agreement shall in no way limit, the rights with respect to the Property or the subject matter thereof which Company may now or hereafter enjoy as a member of the general public.

(v)    <u>Institution of Legal Action</u>:   The free and unrestricted right, exercisable at Company's cost and expense, to institute in the name of and on behalf of Owner, suits and proceedings at law or in equity to enjoin and restrain any infringement(s) of the rights herein granted; Owner hereby assigns to Company any and all causes of action arising from any such infringement(s) and any and all recoveries obtained in any such action.   Owner will not compromise, settle or in any manner interfere with any such litigation.

(vi)    <u>No Obligations/Rights Cumulative</u>:  Nothing contained in this Agreement shall be construed as requiring Company to exercise or exploit, or continue to exercise or exploit, any of the rights herein granted or to maximize revenues.   All rights granted to Company hereunder shall be cumulative.  Company may exercise or refrain from exercising any one or more of such rights separately from or in connection with any other rights granted to Company hereunder or from other sources.

(vii)    With respect to only the "Art the Clown" character ("Character") contained in the Pictures, Owner agrees that, as between Owner and Company, Owner shall own the rights to such Character. In the event any project containing such Character is produced by Owner, his affiliates, licensees or assigns, Producer shall be attached to such project(s) on terms to be negotiated in good faith between the parties.

4.    **REPRESENTATIONS AND WARRANTIES**: Owner hereby represents and warrants and agrees that:

(a)    Neither the Property, nor any part or element thereof: (i) infringes upon or violates the personal or property rights or any other rights of any person or entity (including, without limitation, the rights of copyright, trademark, privacy and publicity); or (ii) contains any element or material which in any manner constitutes a libel, slander or other defamation of any person or entity;

(b)    The Property is wholly fictional and is not based in whole or in part on any actual individual, whether living or dead, or any "real life" incident;

3

(c)    The Property, the Rights and all other rights and privileges granted or to be granted to Company hereunder are and shall at all times be free and clear of any liens, claims, charges or encumbrances;

(d)    No claims, litigation or other proceedings have heretofore been asserted and/or brought and no claims, litigation, proceedings are pending or threatened relating to the Property, the Rights and/or to any of the other rights and privileges granted or to be granted to Company hereunder;

(e)    Owner is the sole and exclusive owner of the Property, and all of the Rights, and of all other rights and privileges granted or to be granted to Company hereunder and Owner has full right, power and authority to make, deliver and perform this Agreement without obtaining the consent or approval of any person or entity;

(f)    No part of the property is in the public domain;

(g)    Owner has not heretofore in any way exercised, disposed of, or optioned the Rights or any part thereof. Without limiting the generality of the foregoing, the Property has not previously been performed, exploited or exhibited as a motion picture, television production, play or in any other form of audio-visual production, and no rights have been granted or licensed to any third party to do so;

(h)    The Property enjoys, and will enjoy, either statutory or (to the extent it may exist) common law copyright protection in the United States and all other countries adhering to the Berne and Universal Copyright Conventions, and the rights granted to Company hereunder are and will be exclusive in all such countries.

(i)    Owner has not done or omitted to do, nor will Owner omit to do, any act or thing which would impair, encumber or diminish Company's full enjoyment of the rights and privileges granted and to be granted to Company under this Agreement;

(j)    Owner has not entered into any agreement (written or oral, implied or express) with any third party which relates to the Property or any production thereof, nor has Owner made any promises to any third party in connection with the Property or any production thereof;

(k)    Owner has entered into no agreements, documents or other instruments with respect to the Property, the Rights, and/or to any of the other rights and privileges granted or to be granted to Company hereunder other than the Underlying Agreements set forth above in Paragraph 3(a);

(l)    Owner has made all required payments under the Underlying Agreements;

(m)    Owner has not and will not enter into any agreement (written or oral, implied or express) with any third party which relates to the Property or any production

4

thereof and Owner has not and will not make any promises to any third party in connection with the Property or any production thereof.

5. **INDEMNITY**:

(a) General: Owner will indemnify Company and save and hold Company harmless of and from any and all claims, demands, actions and liabilities of every kind and character whatsoever, including reasonable attorney's fees, arising out of any breach or violation of the aforesaid representations and warranties by Owner.

(b) Notice of Claim/Control: Owner and Company shall, upon presentation or institution of any claim or action covered by the foregoing indemnity, promptly notify the other of the claim or action, giving the details thereof. All aspects of the defense of such claims or actions, whether as party of any litigation, negotiation or otherwise (including, without limitation, any decision regarding settlement), shall be controlled by Company. Company shall be free to use counsel of Company's choice in connection therewith. Company's control shall not diminish Owner's obligations under Paragraph 3, above. Owner shall cooperate in the defense of any claim or action for which indemnification is provided hereunder and shall have the right (at Owner's expense) to have counsel present in connection therewith, provided such counsel fully cooperates with Company's counsel and does not interfere with the reasonable handling of the claim or action by Company. At any time during the occurrence of any third party claim or action with respect to which Company does not have the obligation to indemnify Owner hereunder, Company may, in addition to all of its other legal and equitable remedies, rescind this Agreement and in such event, Owner shall pay Company any monies received from Company under this Agreement.

6. **ADDITIONAL DOCUMENTS**: Owner will execute and deliver, or cause to be executed and delivered, all such documents, and do all such things as may be necessary and proper to carry out and effectuate the intents and purposes of this agreement, and particularly, without limiting the generality of the foregoing, Owner will execute and deliver, or cause to be executed and delivered, to Company such instruments as may be necessary and proper to vest in Company the rights herein assigned to Company as a matter of record in the United States Copyright Office, attached hereto as Exhibit "A" and Exhibit "B", all without any further payment by or cost or expense to Company other than customary recording charges. In the event Owner shall fail or refuse to execute and deliver any such instruments reasonably required by Company, Company or its nominee shall have, and is hereby granted, the full power and authority, coupled with an interest, as attorney-in-fact for Owner, to execute, deliver and record any and all such instruments and if Owner has the power to execute any such documents for or on behalf of any of Owner's predecessors or other parties, Owner hereby assigns and delegates such power to Owner.

7. **ASSIGNMENT**: This Assignment and any and all of Company's rights hereunder (including rights under copyright) may be licensed and/or assigned relicensed and reassigned by Company and its licensees and assigns in whole or in part to any person or entities. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns. In the event of any

5

assignment of this Agreement and/or of any of Company's rights in and to Property and in the event the assignee assumes all of Company's executory obligations hereunder in writing, Company shall be and is hereby released from all further obligations to Owner hereunder. Owner shall not have the right to assign Owner's rights and obligations hereunder.

8.   REMEDIES:

(a)   Injunctive Relief Against Company:   In the event of a breach of any of Company's obligations under this Agreement, the damage (if any) caused to Owner thereby will not be irreparable or otherwise sufficient to give rise to a right of injunctive or other equitable relief.   Owner's rights and remedies in the event of a breach of this Agreement by Company are limited to the right, if any, to recover damages in accordance with the dispute resolution provisions set forth below.   Owner shall neither seek nor be entitled to any equitable relief to restrict or interfere with Company's right to develop, produce, distribute, market or exploit the Pictures or any other productions produced pursuant to this Agreement (including, but not limited to, derivative works) and the ancillary rights therein or to otherwise exploit or exercise any of the rights granted to Company hereunder.

(b)   Company's Remedies:   The right and privileges granted and agreed to be granted to Company pursuant to this Agreement are of a special unique, unusual extraordinary and intellectual character, making them difficult to replace and giving them a peculiar value, the loss of which cannot be reasonably compensated in damages in an action in at law.   If Owner shall breach any provisions of this Agreement, Company will be caused irreparable damage and, therefore, Company shall be entitled as a matter of right, at its election, to enforce this Agreement and all of the provisions hereof by injunction or other equitable relief.

(c)   Company's Breach:   No failure on the part of Company to perform any of its obligations hereunder shall be deemed a breach of this Agreement unless and until Company fails to cure such failure within thirty (30) calendar days after written notice by Owner to Company of such failure to perform.

(d)   No Waiver:   All remedies shall be cumulative and the exercise of one shall not preclude the exercise of any other remedy.   A waiver of any breach shall not constitute a waiver of any prior or subsequent breach.

9.   CONFIDENTIALITY/PUBLICITY:   Owner shall not, without Company's prior approval, (i) issue or authorize the publication of any news story, publicity or publicity materials relating primarily to the Pictures or Company, (ii) make any derogatory or knowingly false statements concerning the Pictures, Company or any officers or employees of Company,  (iii) disclose any confidential information regarding Company or the Pictures (including, but not limited to, the screenplay or other material, the release plan, the budget, or the terms of any contracts), or (iv) encourage any other individual to do any of the foregoing; *provided, however,* that Owner may issue personal publicity primarily concerning Owner in which the Pictures, Company or any officers or employees of Company are mentioned incidentally, so long as such references are not derogatory or knowingly false and do not contain any confidential information.

6

10.    <u>G OVERNING LAW/DISPUTE RESOLUTION</u>: All controversies, claims or disputes between the parties to this Agreement arising out of or related to this Agreement or the interpretation, performance or breach thereof, including but not limited to, alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this Agreement to arbitrate ("Dispute"),
except as set forth in Paragraph 10(b), below, shall be resolved according to the procedures set forth in Paragraph 10(a) which shall constitute the sole dispute resolution mechanism hereunder:

(a)    <u>Arbitration</u>: All Disputes shall be submitted to final and binding arbitration. The arbitration shall be initiated and conducted according to either the JAMS Streamlined (for claims under $250,000) or the JAMS Comprehensive (for claim over $250,000) Arbitration Rules and Procedures, except as modified herein, including the Optional Appeal Procedure, at the Los Angeles office of JAMS, or its successor ("JAMS") in effect at the time the request for arbitration is made (the "Arbitration Rules"). The arbitration shall be conducted in Los Angeles County before a single neutral arbitrator appointed in accordance with the Arbitration Rules. The arbitrator shall follow California law and the Federal Rules of Evidence in adjudicating the Dispute. The parties waive the right to seek punitive damages and the arbitrator shall have no authority to award such damages. The arbitrator will provide a detailed written statement of decision, which will be part of the arbitration award and admissible in any judicial proceeding to confirm, correct or vacate the award. Unless the parties agree otherwise, the neutral arbitrator and the members of any appeal panel shall be former or retired judges or justices of any California state or federal court with experience in matters involving the entertainment industry. Judgment upon the award may be entered in any court of competent jurisdiction. The party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including reasonable, outside attorneys' fees, incurred in enforcing the award, to be paid by the party against whom enforcement is ordered.

(b)    <u>Other Matters</u>: Any Dispute or part thereof, or any claim for a particular form of relief (not otherwise precluded by any other provision of this Agreement), that may not be arbitrated pursuant to applicable law may be heard only in a court of competent jurisdiction in Los Angeles County.

(c)    <u>Governing Law; Jurisdiction and Venue</u>: This Agreement shall be governed and construed in accordance with the laws of the State of California applicable to contracts entered into and fully performed therein. The parties hereby submit to the exclusive jurisdiction and venue of the local, state and federal courts located in Los Angeles County.

11.    <u>MISCELLANEOUS</u>: This agreement is and Company's rights hereunder are subject to all executory obligations of Owner under and pursuant to the Underlying Agreements and any applicable collective bargaining agreements which are binding on Owner.

(a)    <u>Entire Agreement</u>:    This Agreement sets forth the complete understanding between Owner and Company with respect to the subject matter hereof, and all prior agreements have been merged herein, whether written or oral, and may not be modified except by a written instrument signed by all parties hereto. Owner hereby acknowledges that no representation or

7

promise not expressly contained in this Agreement has been made by Company or any of its officers, employees, agents or representatives.

(b)     Severability:  If there is any conflict between any provision of this Agreement and any present or future statute, law, ordinance or regulation the latter shall prevail; *provided*, that the provision hereof so affected shall be limited only to the extent necessary and no other provision shall be affected.

(c)     Relationship of Parties; Counterparts:  This Agreement is not a partnership between or joint venture of the parties hereto and neither party is the agent of the other.  This Agreement is not for the benefit of any third party, whether or not referred to herein.  This Agreement may be signed in counterpart, each of which shall be deemed an original, but all of which together shall constitute the Agreement.

(d)     Joint and Several Liability:  If a party to this Agreement consists of more than one person or entity, the obligations of such party hereunder shall be joint and several between and among such persons and entities, such that each person or entity shall be fully responsible for such party's performance of all of its obligations under this Agreement.

If the foregoing correctly sets forth your understanding, please sign in the space provided below.

Very truly yours,

RUTHLESS PICTURES, LLC

By: _____

Its: ___Manager_____

AGREED AND ACCEPTED:

_____
Damien Leone

8

STATE OF CALIFORNIA

COUNTY OF ___Richmond___ )

On __March 30. 2013__ before me, ___Sang In Lee___, personally appeared

__Damien Leone__

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        [SEAL]

SANG IN LEE
Commissioner of Deeds
City of New York, No. 5-915
Certificate Filed in Richmond Cnty
Commission Expires Oct 12 2013

9

## EXHIBIT "A"

## SHORT FORM ASSIGNMENT

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Damien Leone (the "Assignor"), sells and assigns to RUTHLESS PICTURES, LLC, ("Company"), its successors and assigns, forever and throughout the universe, all rights, including without limitation, all motion picture, allied and ancillary rights in the original literary material and/or dramatic work (the "Work") described as follows:

TITLE:    "TERRIFIER"

AUTHOR:   Damien Leone

The Work included, but is not limited to: (i) all contents; (ii) all present and future adaptations and versions; (iii) the title, characters and theme; and (iv) the copyright and all renewals and extensions of copyright throughout the universe in perpetuity.

IN WITNESS WHEREOF, the undersigned has executed this Assignment on the date indicated below.

DATED: 3/30/13

ACCEPTED AND AGREED TO:

_____
Damien Leone

RUTHLESS PICTURES, INC.

By: _____

Its: Manager

10

<u>**EXHIBIT "B"**</u>

## SHORT FORM ASSIGNMENT

For good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Damien Leone (the "Assignor"), sells and assigns to RUTHLESS PICTURES, LLC, ("Company"), its successors and assigns, forever and throughout the universe, all rights, including without limitation, all motion picture, allied and ancillary rights in the original literary material and/or dramatic work (the "Work") described as follows:

TITLE:      "THE 9TH CIRCLE"

AUTHOR:    Damien Leone

The Work included, but is not limited to:  (i) all contents; (ii) all present and future adaptations and versions;  (iii) the title, characters and theme; and (iv) the copyright and all renewals and extensions of copyright throughout the universe in perpetuity.

IN WITNESS WHEREOF, the undersigned has executed this Assignment on the date indicated below.

DATED: __3/30/13_____

ACCEPTED AND AGREED TO:

_~~Dan Leone~~_____
Damien Leone

RUTHLESS PICTURES, INC.

By: __~~Jesse Baget~~_____

Its: __Manager_____

11