Devin A. McRae, State Bar Number 223239
*dmcrae@earlysullivan.com*
Peter Scott, State Bar Number 247786
*pscott@earlysullivan.com*
EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff Ruthless Studios, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

RUTHLESS STUDIOS, LLC, a Delaware limited liability company,

Plaintiff,

vs.

DARK AGE CINEMA, LLC, a New York limited liability company; ART THE CLOWN, LLC, a New Jersey limited liability company; and DOES 1-10, inclusive,

Defendants.

Case No. 2:26-cv-6465-MWC-SK

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1. **Copyright Infringement**
2. **Declaratory Relief**
3. **Trademark Infringement and Unfair Competition**

## I. NATURE OF THE ACTION

1. Plaintiff Ruthless Studios, LLC ("Ruthless Studios"), as the assignee of Ruthless Pictures, LLC ("Ruthless Pictures"), brings this action arising out of written agreements entered in or about March 2013 governing the development, production, and exploitation of motion picture properties associated with the short films commonly known as "Terrifier" and "The 9th Circle," and the feature-length motion picture that incorporated those works together with newly created material *All Hallows' Eve*.

2. Under these agreements, Ruthless Pictures acquired ownership and control of specified rights in the assigned works, including "Terrifier," "The 9th Circle," and the resulting feature film *All Hallows' Eve*. These rights included, among other things, the pictures and their underlying materials, including titles, themes, stories, dialogue, content, characters, adaptations, and versions and the right to produce any audiovisual "sequels thereto and remakes thereof and all other types of derivative works based thereon" and the ownership of "all copyrights, neighboring rights, trademarks and any and all other ownership and exploitation rights" as to the assigned works and feature film.

3. Ruthless Pictures also engaged Damien Leone (principal of defendants herein) to write and direct *All Hallows' Eve*. Those agreements made Ruthless Pictures the sole and exclusive owner of the screenplay, the resulting motion picture, and the materials created for the film, and granted broad rights to exploit those materials in sequels, remakes and other subsequent productions.

4. Leone agreed that he would retain certain, unspecified "rights" to the "Art the Clown" character appearing in the "Terrifier" short film for use in any non-Terrifier related project, but that Leone's retention of such rights included an obligation that Ruthless Pictures, or its assignee, be attached to any future non-Terrifier related projects containing the Art the Clown character and that the parties negotiate Ruthless's Pictures or Ruthless Studios' participation in good faith. Properly

read in context with the rest of the transaction, this provision preserved a field for a separate "Art the Clown" specific exploitation in a non-Terrifier context, while leaving intact Ruthless Pictures' ownership and exploitation rights in Terrifier, The 9th Circle, and All Hallows' Eve.

5. Ruthless Pictures assigned all of its rights under the Assignment Agreement to Ruthless Studios on or about August 11, 2018, as permitted under the Assignment Agreement's "Assignment" provision.

6. After Ruthless Pictures gave Leone a limited, one-time authorization for a low-budget Terrifier feature in approximately 2015, Leone and the corporate Defendants Dark Age Cinema, LLC ("Dark Age") and Art the Clown, LLC ("Art the Clown"), without Ruthless Pictures' knowledge, consent or participation, thereafter developed, produced, marketed, distributed, and monetized multiple projects and commercial ventures—including feature film sequels to "Terrifier" aptly named Terrifier 2 and Terrifier 3 and extensive TERRIFIER-branded merchandising/licensing arrangements—derived from and/or exploiting the assigned property in violation of Plaintiff's rights. Further, Dark Age and Art the Clown developed numerous projects featuring the Art the Clown character, while excluding Ruthless Pictures and/or Ruthless Studios from the required attachment and good-faith negotiation process.

7. Terrifier 2 and Terrifier 3 do not merely share unprotectable horror ideas with Plaintiff's works. They continue the same centrally depicted Art the Clown character and copy a combination of protectable audiovisual expression, including recurring staging, sequences, visual presentation, character behavior, specific set pieces, the distinctive TERRIFIER title-card treatment, and the particular selection and arrangement of expressive elements identified below.

//

//

//

8. Ruthless Studios seeks relief for copyright infringement and false designation of origin/unfair competition, a declaration of the parties' respective rights, and the remedies authorized by the Copyright Act and Lanham Act, as well as remedies of disgorgement and accounting.[1]

## II. PARTIES

9. Plaintiff Ruthless Studios, LLC is, and at all relevant times was, a Delaware limited liability company that is qualified to do business in California and whose sole member is a citizen of the state of Hawaii. Ruthless Studios is the successor-in-interest to Ruthless Pictures with respect to the rights at issue in this action.

10. Defendant Dark Age Cinema, LLC is, and at all relevant times was, a New York limited liability company with its principal place of business in New York County and whose members are all citizens of the state of New York.

11. Defendant Art the Clown, LLC is, and at all relevant times was, a New Jersey limited liability company with its principal place of business in Monmouth County and whose members are all citizens of the state of New Jersey.

12. The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are presently unknown to Ruthless, and therefore are sued under fictitious names. Ruthless will seek leave to amend this Complaint to allege the true names and capacities of Does when they are ascertained. Defendants Dark Age Cinema, Art the Clown and Does 1 through 10 are referred to collectively herein as "Defendants."

[1] Pursuant to an arbitration provision in the Assignment Agreement, an arbitration proceeding has been brought and is currently pending with JAMS Los Angeles against Damien Leone concerning this subject matter as such claims pertain to Mr. Leone. This separate action is brought as to Dark Age and Art the Clown, who are non-signatories to the Assignment Agreement and its arbitration provision.

13. On information and belief, Defendants are, and at all times mentioned herein, were, the agents, servants and/or employees of each of the other Defendants, and each of them was acting within the scope of its, his or her authority as the agent, servant and/or employee of each other. On information and belief, Defendants performed the acts and conduct herein alleged directly, aided and abetted the performance thereof or knowingly acquiesced in, ratified and accepted the benefits of such acts and conduct, and therefore each of the Defendants is liable to the extent of the liability of the Defendants as alleged herein; consequently, all Defendants are jointly and severally liable to Ruthless for the damages sustained as a proximate result of their conduct.

14. On information and belief, at all times herein material, Dark Age and Art the Clown were and are completely dominated and controlled by their co-Defendants and each was the alter-ego of the other and that the corporate form for each was utilized as a mere instrumentality to perpetrate a fraud or for other improper or unlawful purposes. Ruthless is informed and believes the piercing the corporate veil and disregard of the corporate form with respect to Dark Age and Art the Clown is appropriate and warranted in this instance as numerous indicia of alter-ego liability are present here, including without limitation, that each company shared officers and directors, shared office space, employees and property, that little to no corporate formalities were adhered to, that funds and contractual obligations were commingled between the companies, that the companies were undercapitalized and insolvent, and that the Defendants treated the assets of the other entity Defendants as their own, among other things.

//

//

//

//

//

15. Whenever and wherever reference is made in this Complaint to any conduct by Defendant or Defendants, such allegations and references shall also be deemed to mean the conduct of each of the Defendants, acting individually, jointly and severally. Whenever and wherever reference is made to individuals who are not named as Defendants in this Complaint, but were employees and/or agents of Defendants, such individuals at all relevant times acted on behalf of Defendants named in this Complaint within the scope of their respective employment.

## III. JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the State of Hawaii and diversity exists because all named Defendants are citizens of New York and New Jersey. The amount in controversy exceeds $75,000. This case involves entities with sufficient contacts with California to make proper the exercise of personal jurisdiction over them, including without limitation Defendants' intentional distribution, offering, licensing, promotion and commercialization of the accused Terrifier films and TERRIFIER-branded goods and services throughout California and within this District, including theatrical exhibition, streaming and digital distribution, physical media, merchandising, and other commercial channels.

17. Additionally, this action arises under the copyright laws of the United States, 17 U.S.C. §§ 101, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

18. Venue is proper in this Court. A substantial part of the acts or omissions giving rise to the claims alleged occurred in Los Angeles County, California.

//

//

//

//

## IV. FACTUAL ALLEGATIONS

### A. RUTHLESS PICTURES ACQUIRES TERRIFIER, THE 9TH CIRCLE, AND BROAD SEQUEL AND DERIVATIVE RIGHTS

19. In or about 2012, Jesse Baget founded Ruthless Pictures, LLC, an independent film sales, marketing, production company focused on acquiring, developing and/or licensing commercially viable motion picture properties.

20. As part of its business model, Ruthless Pictures sought to acquire intellectual property that could be developed into feature-length films and licensed to distributors in the United States and internationally.

21. During this period, Ruthless Pictures pursued distribution relationships with multiple distributors and ultimately secured an arrangement with RLJ/Image Entertainment (now AMC), under which Ruthless Pictures would provide films for distribution consideration.

22. In late 2012 or early 2013, Ruthless Pictures identified two short horror films created by Damien Leone entitled "Terrifier" and "The 9th Circle." Before Ruthless Pictures acquired the films, Leone had already publicly released, exhibited, promoted, distributed and/or made the *Terrifier* short available to the public under the TERRIFIER title, including through public online exhibition. Through that public exploitation, the TERRIFIER designation was used in connection with the *Terrifier* motion-picture property before Ruthless Pictures' acquisition. Indeed, Ruthless Pictures first became aware of the property as a result of its public availability. Ruthless Pictures believed these properties had distinctive audiovisual elements that could support a commercially valuable feature-length property, franchise and merchandise.

23. Baget, on behalf of Ruthless Pictures, commenced discussions with Leone about purchasing the "Terrifier" and "The 9th Circle" short films and also about financing and distributing a full feature length film to showcase the "Art the Clown" character.

24. Because the combined runtime of the two short films was approximately 35–40 minutes—insufficient for a feature film—Ruthless Pictures proposed creating a new feature-length film that would incorporate the short films together with newly created narrative material to create a feature length, 70 plus minute film.

25. Baget, on behalf of Ruthless Pictures, thus, proposed creating a new segment called "All Hallows Eve" that tied together the previously made "Terrifier" and "The 9th Circle" short films with a new original story showcasing the "Art the Clown" character. The idea was enthusiastically received by Leone and Ruthless Pictures began the process of securing distributors and financing. Leone and Ruthless agreed that Baget would be credited with "Story by Jesse Baget" on the overall feature film.

26. In March 2013, Leone entered into several written agreements with Ruthless Pictures governing the development and exploitation of these properties.

27. First, Leone executed an Assignment Agreement. Pursuant to the Assignment Agreement, for a purchase price of $5,000, Leone transferred to Ruthless Pictures ownership of the motion pictures Terrifier and The 9th Circle, together with the underlying materials, copyrights and derivative rights in and to, without limitation, "the screenplay, the title, themes, stories, dialogue and all of the other contents thereof, and the characters therein, and all translations, adaptations, and versions thereof, whether now existing or hereafter created…" and the right to exploit that ownership commercially in any media and in any and all territories and jurisdictions, including the "right to produce audiovisual works of all types […] and sequels thereto and remakes thereof and all other types of derivative works based thereon…". Leone also granted to Ruthless Pictures all neighboring rights, trademarks (including the existing TERRIFIER mark) and any and all other ownership and exploitation rights in Terrifier and The 9th Circle in any and all territories and jurisdictions. The TERRIFIER designation was not transferred in isolation. Rather, Ruthless Pictures acquired the *Terrifier* motion picture itself, its title and underlying materials, its sequel

and derivative-work rights, its merchandising and commercial exploitation rights, and the associated trademark rights. Ruthless Pictures thereby succeeded to Leone's preexisting use of and rights in the TERRIFIER designation, together with the goodwill associated with the *Terrifier* property. A true and correct copy of the Assignment Agreement is attached hereto as **Exhibit 1**.

28. Second, Leone entered into a Screenwriter Agreement under which he agreed to write the screenplay for the feature length All Hallows' Eve film. A true and correct copy of the Screenwriter Agreement is attached hereto as **Exhibit 2**. Under the Screenwriter Agreement, Ruthless Pictures became the sole and exclusive owner, in perpetuity, of all rights of every kind and nature in the materials written or submitted by Leone for All Hallows' Eve and the results and proceeds of his writing services. The agreement further provided broad rights to use, exploit, advertise, merchandise, exhibit, and create sequels, remakes, interactive works, videogames, and other works based on those materials. Third, Leone and Ruthless Pictures entered into a Director Agreement. The Director Agreement provides that, as between Ruthless Pictures and Leone, All Hallows' Eve and the materials pertaining to or included in the picture, together with all results and proceeds of Leone's directing services, are the sole and exclusive property of Ruthless Pictures, including copyrights, renewals, extensions, and associated exploitation rights. The Director Agreement separately addresses "Subsequent Productions" and gives Leone a first opportunity to negotiate to direct a remake, prequel, sequel, television production, or other audiovisual work associated with, based upon, or utilizing characters contained in the screenplay. If the parties did not reach agreement within the contractual negotiation period, Ruthless Pictures was free to engage another director. That provision is consistent with Ruthless Pictures' ownership of the right to make subsequent productions based on All Hallows' Eve and its characters and materials. A true and correct copy of the Director Agreement is attached hereto as **Exhibit 3**.

29. In 2013, Ruthless Pictures, LLC registered the copyrights to the All Hallows' Eve film and screenplay, true and correct copies of which are attached hereto as **Exhibits 4 and 5**. Additionally, the original copyright registrations for Terrifier and The 9th Circle are attached hereto as **Exhibits 6 and 7**.

**B. THE ART THE CLOWN PROVISION DOES NOT ELIMINATE RUTHLESS PICTURES' RIGHTS IN THE PURCHASED PROPERTIES**

30. During negotiations, after reviewing and agreeing to the terms of the three 2013 agreements, Leone requested only one addition: a provision addressing future merchandising and licensing projects featuring the "Art the Clown" character. It was understood by both parties that the separate Art-specific opportunities would have to remain ***outside*** the properties and rights being acquired by Ruthless Pictures and that these opportunities be entirely non-Terrifier related, so that the added provision would preserve those separate Art-specific opportunities without diminishing the copyrights, character, sequel, derivative-work, or exploitation rights granted to Ruthless Pictures under the three agreements. The parties agreed that, if Leone (including through any affiliated entity, licensee, or assign) produced a future non-Terrifier related project featuring the Art the Clown character, Ruthless Pictures would be "attached" to that project and the parties would negotiate in good faith the terms of Ruthless Pictures' participation, including compensation, credit, and involvement appropriate to the project. The attachment and good-faith negotiation obligation was intended to occur before proceeding with material steps such as financing, production, distribution arrangements, and commercialization, so that Ruthless Pictures would have a meaningful opportunity to participate.

31. The Art provision does not state that Leone retained or received back ownership of Terrifier or The 9th Circle, the copyrights in those films, their titles or trademarks, or the express sequel, remake, derivative-work, merchandising, and exploitation rights conveyed elsewhere in the same agreement.

32. During the negotiations, Leone's request was understood by all parties as preserving his ability to pursue separate non-Terrifier related Art-specific opportunities, such as an Art the Clown product or project independent of the Purchased Properties, while Ruthless Pictures would remain attached and participate on terms negotiated in good faith.

33. Ruthless Pictures understood the provision to distinguish between (a) exploitation of Art as a stand-alone character independent of Terrifier and The 9th Circle, and (b) exploitation of Art as part of Terrifier, The 9th Circle, or sequels, remakes, derivative works, or merchandise based on those assigned properties. The latter remained within the field of rights purchased by Ruthless Pictures.

34. That construction also harmonizes the Art provision with the Screenwriter and Director Agreements, including the Director Agreement's express treatment of subsequent productions utilizing characters from the All Hallows' Eve screenplay.

35. In all events, even under Defendants' broader construction of Leone's retained Art rights, the Art provision expressly requires Ruthless Pictures to be attached to any project containing Art produced by Leone or his affiliates, licensees, or assigns. Defendants did not attach Ruthless Pictures or Plaintiff to the challenged projects or negotiate Plaintiff's participation in good faith.

36. Plaintiff's copyright claim is not dependent solely on ownership of Art the Clown as a free-standing character. Plaintiff also owns copyrights and exclusive derivative-work rights in Terrifier, The 9th Circle, All Hallows' Eve, the All Hallows' Eve screenplay, and the particular protectable audiovisual and literary expression embodied in those works.

//

//

//

//

### C. ALL HALLOWS' EVE IS RELEASED TO COMMERCIAL SUCCESS

37. After execution of the agreements, Ruthless Pictures financed and produced the feature film All Hallows' Eve, which incorporated the *Terrifier* and *9th Circle* short films and the new narrative material developed for the feature film – including use of the Art the Clown character in the new narrative material outside of the *Terrifier* and *9th Circle* short portions of the feature film. Leone worked closely with Ruthless Pictures during the development, editing, and marketing of the film.

38. On June 19, 2013, Ruthless Pictures registered the copyright as to both the film and the screenplay for *All Hallows' Eve*.

39. Ruthless Pictures secured a distribution agreement for *All Hallows' Eve* with RLJ/Image Entertainment and delivered the completed film. Ruthless Pictures also pursued and secured international sales for *All Hallows' Eve*, including in the United Kingdom, Germany and Poland. Ruthless Pictures invested considerable time and money marketing and promoting the film.

40. Through these efforts, the character Art the Clown gained increasing recognition among horror audiences.

41. Art the Clown began appearing on lists of notable horror characters and villains on various entertainment websites and horror publications. In October 2014, Leone himself acknowledged the increasing popularity of the character, stating in an email that Art the Clown was "getting big now."

42. Following the release of *All Hallows' Eve*, the parties continued discussing additional projects involving the Terrifier property and the Art the Clown character.

43. In 2014, Ruthless Pictures also financed another film directed by Leone entitled *Frankenstein vs. the Mummy*.

### D. THE ONE-TIME TERRIFIER AUTHORIZATION AND SUCCESSION TO RUTHLESS STUDIOS

44. After All Hallows' Eve was released, Leone continued discussing potential Terrifier-related projects and merchandising opportunities with Ruthless Pictures. In or around 2014, Ruthless Pictures hired industry professional Steve Barton to assist in identifying licensing and merchandising opportunities involving the Terrifier property and the Art the Clown character. Barton subsequently began exploring opportunities to license and merchandise the property.

45. In or around 2015, Leone informed Ruthless Pictures that he wished to produce a very low-budget Terrifier project. Leone represented that the project would have a budget of approximately $35,000 and would likely be financed through crowd funding. In explicit recognition of Ruthless Pictures' ownership of the Terrifier property, Leone asked Ruthless Pictures to permit him to produce this limited project on a "one-time" basis so that he could generate income while Ruthless Pictures continued seeking financing for a larger Terrifier film. Ruthless Pictures agreed to permit and license Leone to produce this limited project as a one-time exception. Ruthless did not request compensation in connection with this project and hoped that the project would ultimately help promote the Terrifier property and lead to larger projects involving the property. Leone's request for permission from Ruthless Pictures for this "one-time" exception, reflected Leone's understanding and intent that Ruthless Pictures was the actual owner of the Terrifier properties.

46. In late 2017, Ruthless Pictures was notified by Leone that Leone's and Dark Age's one-off, low-budget Terrifier film was completed and seeking distribution. Leone requested Ruthless Pictures' assistance in this regard, which Ruthless Pictures obliged by sourcing distribution deals and helping with publicity. Ruthless considered this film a low-budget showcase of Ruthless Picture's proprietary intellectual property in Terrifier and hoped that it would lead to bigger budget projects and licensing/merchandising opportunities for the property.

47. The authorized film's use of TERRIFIER was undertaken pursuant to Ruthless Pictures' permission and in connection with Ruthless Pictures' continuing claimed ownership of the Terrifier property; it was not an adverse use by which Leone or Dark Age purported to acquire priority over Ruthless Pictures. Ruthless Pictures' conduct in this regard was and is in full compliance and accord with the Assignment Agreement, which permits Ruthless Pictures to exercise or refrain from exercising its ownership rights or otherwise obligate Ruthless Pictures to maximize revenues and that the exercise or non-exercise of such rights does not constitute a waiver of any such rights either retroactively or prospectively.

48. On or about August 11, 2018, Ruthless Pictures transferred all of its ownership rights with respect to the Terrifier Property and all of its rights under the Assignment Agreement, Screenwriters Agreement and Directors Agreement, among other things, to Ruthless Studios by way of a written agreement.

49. After these discussions, Leone ceased communicating with Ruthless Pictures and/or Ruthless Studios regarding Terrifier projects. Leone never informed Ruthless Pictures or Ruthless Studios that he was producing or developing additional Terrifier films. Leone also never informed Ruthless Pictures or Ruthless Studios that he was licensing or merchandising the Terrifier property. Instead, Leone began producing and exploiting Terrifier-related projects independently and without the involvement of (or notice to) Ruthless through and under the umbrella of Defendants Dark Age Cinema, LLC and Art the Clown, LLC.

50. Throughout 2019 through 2023, Baget was living in a remote area, had deleted all social media accounts and had largely ceased following and keeping abreast of horror film related news.

//

//

//

//

51. After a period of seclusion in this remote area during which Baget had very limited contact with anyone other than those directly involved in his company, Baget became aware that Leone and Dark Age had produced a new Terrifier film titled *Terrifier 2*. Unlike the small crowd-funded project that had previously been discussed, *Terrifier 2* was produced with a substantially larger budget and received theatrical distribution. Ruthless Studios had ***never*** been contacted regarding the project and had ***never*** given authorization or license for use of its copyrights, trademarks, sequel and derivative works rights as to *Terrifier 2* and was never provided with any opportunity to participate in its development, financing, or distribution.

52. Ruthless Studios subsequently learned that Leone and Defendants Dark Age and Art the Clown had been exploiting the TERRIFIER property through numerous commercial ventures, including production of additional Terrifier films, merchandising agreements, licensing arrangements, and promotional events involving Terrifier and the Art the Clown character. Ruthless Studios was not informed of these activities, never gave consent or license as to them and did not receive any share of the revenues generated by them.

53. Despite Leone's and Defendants' conduct, Ruthless Studios continued to honor its contractual obligations. From approximately 2016 through the present, Ruthless Studios continued paying Leone his share of revenues derived from the film *All Hallows' Eve*. Leone accepted these payments while simultaneously exploiting the Terrifier property without Ruthless' license, authorization or participation.

54. In or around late 2023, Ruthless Studios learned that Leone and Dark Age were producing a third film titled *Terrifier 3*.

//

//

//

//

55. The *Terrifier 2* and *Terrifier 3* films are clearly derivative works of, and/or sequels to, the original Terrifier short film, the rights to which are owned exclusively by Ruthless Studios. In particular, both *Terrifier 2* and *Terrifier 3* involve the same themes, settings, narrative structure and story lines, female victim characters and "kill" methodology, unique horror aesthetic look, feel and mood (including the exact same Terrifier logo and title card color, font and theme) and other expressive elements including the unique comedy-sadism blend established in the original Terrifier short and continued in Baget's co-created story starring Art the Clown and both films utilize the Terrifier trademarks owned by Plaintiff.

56. Around the same time in late 2023, Ruthless Studios also learned that multiple merchandising deals involving Art the Clown had been negotiated by Leone, Dark Age and/or Art the Clown. Many of these deals had been facilitated by Steve Barton, who had originally been tasked by Ruthless Pictures and Ruthless Studios with seeking merchandising opportunities for the property. Ruthless Studios had not been notified of these deals.

57. Neither Leone nor Defendants provided Plaintiff with a written reassignment, release, amendment, or other instrument by which Plaintiff surrendered the rights transferred in 2013 and 2018. Nor did Defendants provide Plaintiff a direct, clear, and express notice that they purported to repudiate Plaintiff's ownership while those projects were being developed.

58. To the contrary, Ruthless Studios continued to administer the parties' ongoing relationship concerning All Hallows' Eve and the 2013 agreements and continued making payments to Leone from revenues derived from the film, which Leone accepted.

//

//

//

//

59. Through this conduct, Dark Age and Art the Clown have violated Ruthless Studios' copyright and trademark ownership and other contractual rights in and to Terrifier and the Art the Clown character and exploited the copyrighted and trademarked material for their own pecuniary gain. These projects include multiple Terrifier feature films, merchandising deals, and promotional events. Further, as to any non-Terrifier related projects or ventures containing the Art the Clown character, Dark Age and Art the Clown failed and refused to attach Ruthless Studios to any of these projects or commercial ventures and failed and refused to "negotiate[] in good faith" with Ruthless Studios as to its compensation, credit or involvement as to the project. To be clear, however, all or virtually all of Defendants' Art the Clown commercial ventures are Terrifier-related projects. These constitute clear violations of Ruthless Studios' copyrights and trademarks in and to Terrifier as well as Ruthless Studios' rights to be attached to projects involving the Art the Clown character.

60. Within the 3-year period immediately preceding the filing of this action, *Terrifier 2* and *Terrifier 3* have both been released theatrically and with additional theatrical runs subsequent to the original release and have been distributed and made available in multiple different formats, including on physical media including Blu-Ray, DVD and VHS as well as made available on various streaming platforms, including Netflix, Amazon Prime, Peacock, Screambox, Tubi and others. Additionally, within the 3-year period immediately preceding the filing of this action, Defendants Dark Age and Art the Clown have exploited the copyrighted material owned by Ruthless Studios through various merchandising deals, licensing deals and Terrifier themed products, events, and other related commercial ventures.

//

//

//

//

//

### E. SPECIFIC PROTECTABLE SIMILARITIES BETWEEN PLAINTIFF'S WORKS AND TERRIFIER 2

61. Terrifier 2 expressly presents itself as part of the same Terrifier franchise and uses the same TERRIFIER title and substantially the same distinctive title-card treatment associated with the Terrifier short incorporated into All Hallows' Eve.

62. Terrifier 2 copies the same central graphic and audiovisual depiction of Art the Clown used in Plaintiff's works: a silent killer clown with the same black-and-white costume and makeup design, exaggerated facial expression, mime-like mannerisms, sadistic playfulness, violent conduct, and recurring blend of grotesque horror and dark comedy.

63. Beyond that central character depiction, Terrifier 2 repeats a specific combination of expressive choices, staging, and set pieces found in All Hallows' Eve and the underlying assigned works. Examples include, without limitation:

(a) The same stylized TERRIFIER title treatment, including substantially the same distinctive font against a dark or black background.

(b) A Halloween-night setting used not merely as a date but as an expressive device allowing Art's clown appearance to move through public spaces among costumed people before his violent identity is revealed.

(c) Art's recurring use of a large black bag or comparable container holding cutting and dismemberment tools, functioning as a recurring visual prop associated with the character.

(d) A sequence in which Art uses a hypodermic needle to incapacitate or drug a victim.

(e) The use of demonic or unnaturally glowing eyes in connection with the villainous figures.

(f) Victims trapped or pursued through an abandoned-building or basement environment, using similar claustrophobic staging and pursuit dynamics.

(g) A grotesquely mutilated victim who is missing facial or other body parts yet remains alive and capable of communicating.

(h) Art's use of an improvised whip or flail composed of hair and tools or implements.

(i) A sequence in which a female victim attacks and stabs Art from behind, temporarily bringing him down.

(j) A sequence in which Art shoots a victim in the head from in or around a vehicle.

(k) A recurring visual gag or character beat in which Art reacts with a grin or comic nonchalance after a severe eye injury.

(l) A distinctive cheeky, menacing wave by Art used at a key confrontation.

(m) Art's use of bodily fluids, blood, or excrement to write words or his name as a grotesque calling card, including the recurrence of similar profanity and handwriting.

(n) The repeated, deliberate honking of a horn to unnerve a victim.

64. Plaintiff does not contend that any single generic horror trope listed above is protectable in isolation. The copying concerns the particular expressive execution of individual elements where protectable and, independently, the cumulative selection, coordination, arrangement, repetition, staging, and combination of those elements with the same central character design and visual/tonal presentation.

65. Terrifier 2 also expressly credits performers as "9th Circle Demon 1" and "9th Circle Demon 2," invoking The 9th Circle, one of the specific works and underlying properties assigned to Ruthless Pictures.

66. The similarities are especially probative because Leone had direct access to Plaintiff's works: he created the original shorts, worked for Ruthless Pictures in writing and directing All Hallows' Eve, signed the agreements transferring and allocating the relevant rights, and later requested permission for the one-time low-budget Terrifier film.

## F. SPECIFIC PROTECTABLE SIMILARITIES BETWEEN PLAINTIFF'S WORKS AND TERRIFIER 3

67. Terrifier 3 again uses the identical central Art the Clown identity and substantially the same graphic depiction and persona fixed in Plaintiff's works, including the same distinctive black-and-white makeup, costume elements, facial design, silent mime-like performance, exaggerated gestures, sadistic humor, and violent characterization. In portions of Terrifier 3, a Santa Claus coat or holiday covering is placed over the otherwise continuing Art depiction.

68. Terrifier 3 again uses the TERRIFIER title as a sequel designation and the same stylized title/logo treatment associated with the earlier Terrifier property.

69. Terrifier 3 also continues the holiday-disguise structure used in the earlier works. All Hallows' Eve and Terrifier 2 use Halloween as an expressive setting in which Art can appear among unsuspecting people in costume; Terrifier 3 shifts that device to Christmas and uses Santa imagery to permit the same killer to enter an apparently safe holiday environment before revealing the violence beneath the disguise.

70. The opening of Terrifier 3 further returns to a child-centered holiday-night domestic setting: an unsuspecting household treats the apparent holiday figure as part of the seasonal setting before Art invades the home and directs violence against the family. All Hallows' Eve likewise uses a child-centered holiday-night framing story in a family home and culminates with Art crossing into that domestic reality and killing the children. Indeed, this particular expressive element was explicitly discussed by Leone and Baget during the development of All Hallows' Eve as a memorable "hook" that would be impactful to the audience; it was a central and crucial part of the All Hallows' Eve story, screenplay, film and lore for which Baget received a "Story by" credit. Plaintiff relies on that recurrence as one part of the broader selection and arrangement of expression, not as a claim to own the generic idea of a home invasion or holiday horror story.

71. Terrifier 3, like Terrifier 2, thus continues not only an abstract killer-clown idea but the same particularized franchise expression: the same Art graphic identity and behavior, the same recurring title/logo presentation, the same holiday-disguise mechanism, and the same grotesque-horror/dark-comedy tonal synthesis, combined with sequel continuity and other elements of the Terrifier property.

72. The foregoing similarities are illustrative and not exhaustive. Plaintiff will identify additional scene-by-scene and audiovisual similarities through discovery and expert analysis to the extent required, but the allegations above identify objective similarities in protectable expression sufficient to place Defendants on notice of the copying alleged.

**G. PLAINTIFF'S PRIOR AND CONTINUOUS USE OF TERRIFIER IN COMMERCE**

73. Before the March 2013 Assignment Agreement, Leone had publicly released, exhibited, promoted, distributed and/or made available the *Terrifier* motion-picture short under the TERRIFIER designation. The TERRIFIER designation therefore had been publicly used in connection with the *Terrifier* property before Ruthless Pictures acquired it.

74. Under the 2013 Assignment Agreement, Leone transferred to Ruthless Pictures not merely the TERRIFIER designation, but the *Terrifier* motion picture and underlying property itself, including its title, underlying materials, sequel and derivative-work rights, merchandising rights, trademarks, and other ownership and commercial exploitation rights. The trademark rights were thus transferred together with the property and goodwill to which the TERRIFIER designation related, and Ruthless Pictures succeeded to the preexisting use and priority associated with that property.

//

//

//

75. Following the acquisition, Ruthless Pictures continued and expanded the commercial exploitation of the same property. *All Hallows' Eve*, released nationally and internationally in 2013, incorporated the *Terrifier* short as a separately identifiable segment displaying the TERRIFIER title treatment to consumers, and Ruthless Pictures marketed and promoted the *Terrifier* property in connection with that commercial release.

76. Ruthless Pictures also pursued commercial licensing and merchandising opportunities involving the *Terrifier* property and Art the Clown, including through Steve Barton beginning in or about 2014.

77. When Leone later proposed the one-time low-budget feature-length *Terrifier* production, he sought Ruthless Pictures' authorization before proceeding. Ruthless Pictures authorized that project and later participated directly in efforts to obtain distribution and publicity for the completed film. The resulting use of TERRIFIER was therefore an authorized continuation of use associated with the property Ruthless Pictures had acquired, rather than an adverse use establishing competing priority in Leone or Dark Age.

78. Ruthless Pictures' and later Plaintiff's exploitation of the *Terrifier* property and *All Hallows' Eve* continued thereafter, including through distribution, promotion, licensing efforts, and receipt of revenues. Plaintiff continued performing under the parties' ongoing relationship after the 2018 transfer to Ruthless Studios.

79. By the time of Defendants' challenged uses in connection with *Terrifier 2*, *Terrifier 3*, merchandising, licensing and related commercial ventures, TERRIFIER had acquired secondary meaning and goodwill as a source-identifying designation for a continuing motion-picture property and related entertainment goods and services. Consumers encountering TERRIFIER understood the designation as identifying a single *Terrifier* franchise or source, whether or not they knew the legal identity of that source.

80. Defendants use TERRIFIER as a trademark and franchise brand, not solely as expressive words appearing inside a film. Defendants use the designation prominently to identify a continuing film series, on physical and digital distribution, in advertising and promotion, on merchandise and consumer goods, in licensing, and in connection with promotional events and other commercial ventures.

81. Defendants' repeated use of the identical TERRIFIER designation and substantially the same stylized logo across successive films and collateral goods functions as an umbrella source identifier for Defendants' products and services.

82. Defendants' use is likely to cause consumers to believe that Terrifier 2, Terrifier 3, TERRIFIER-branded merchandise, and related commercial ventures are authorized by, affiliated with, sponsored by, or originate from the same source as the Terrifier property and authorized uses in which Plaintiff claims prior rights.

83. Leone and Defendants had actual knowledge of Plaintiff's claimed rights because Leone signed the 2013 agreements, sought permission for the one-time feature, accepted Ruthless Studios' later performance under the parties' continuing arrangement, and nevertheless proceeded with the challenged uses without obtaining Plaintiff's authorization.

## <u>FIRST CLAIM FOR RELIEF</u>

### Copyright Infringement

### (Against Defendants Dark Age Cinema, LLC, Art the Clown, LLC and Does 1-10, inclusive)

84. Ruthless Studios incorporates by reference all preceding allegations of the Complaint as though fully set forth here.

85. Ruthless Studios is the owner and/or exclusive rights holder of valid copyrights in and to the motion picture shorts *Terrifier* and *The 9th Circle* and the feature motion picture and screenplay *All Hallows' Eve*, including the underlying material embodied therein, by virtue of written agreements and registrations identified in the Complaint.

86. The copyrights to the *All Hallows' Eve* film and screenplay were registered with the United States Copyright Office in 2013 as reflected in Exhibits 4 and 5.

87. Ruthless Studios owns the exclusive rights to reproduce, distribute, publicly perform and/or display, and to prepare and exploit derivative works and sequels based on the copyrighted works and underlying material.

88. Without Ruthless Studios' authorization, Defendants Dark Age Cinema, LLC, Art the Clown, LLC, and Does 1–10 copied protectable expression from Ruthless Studios' copyrighted works and prepared, produced, marketed, distributed, and exploited unauthorized derivative works and/or sequels, including at minimum *Terrifier 2* and *Terrifier 3*, as well as merchandise, apparel, videogames, rides and events and other derivative works.

89. The infringing works are substantially similar to Ruthless Studios' copyrighted works in protectable expression, including, in addition to the Art the Clown character and without limitation, the selection, coordination, and arrangement of expressive elements alleged above, such as specific recurring expressive elements, themes, settings, distinctive narrative structure and story lines, characters and character types, distinctive kill methodology, staging and set pieces, and the particularized look, feel, mood, stylistic aesthetic, and title card treatment and tonal blend of horror and dark comedy that defines the Terrifier property.

90. To the extent Defendants contend that Leone retained rights in the Art the Clown character, Ruthless Studios alleges, in addition and/or in the alternative, that Defendants' infringement is not limited to any single, free-standing character concept and includes copying and exploitation of other protected expression, underlying material and exclusive sequel/derivative-work rights owned by Ruthless Studios.

//

//

91. Defendants' acts were knowing and willful because, among other things, Leone executed written agreements transferring rights to Ruthless Studios and previously sought and obtained limited permission for a specific *Terrifier* project, demonstrating knowledge that further exploitation required authorization.

92. As a direct and proximate result of Defendants' infringement, Ruthless Studios has been damaged and is entitled to recover all available remedies, including actual damages and Defendants' profits attributable to the infringement, and/or statutory monetary relief to the extent available, in amounts to be proven at trial.

93. Ruthless Studios further seeks injunctive and/or equitable relief to the extent available, including orders preventing further unauthorized exploitation and requiring corrective measures.

94. Because Defendants have wrongfully obtained revenues and profits through the exploitation of the Terrifier property and related derivative works, those revenues and profits are subject to the imposition of a constructive trust in favor of Ruthless Studios pending final adjudication of the parties' rights.

95. Plaintiff is entitled to the remedies authorized by 17 U.S.C. sections 502 through 505, including injunctive relief, actual damages and Defendants' attributable profits under section 504(b), statutory damages to the extent legally available and elected, costs, and attorneys' fees to the extent authorized. An accounting is sought only as ancillary relief necessary to determine revenues, costs, and profits; it is not pleaded as a separate claim.

//

//

//

//

//

//

//

## SECOND CLAIM FOR RELIEF

**Declaratory Relief (28 U.S.C. §§ 2201, *et seq.*)**

**(Against Defendants Dark Age Cinema, LLC, Art the Clown, LLC and Does 1-10, inclusive)**

96. Ruthless Studios incorporates by reference all preceding allegations of the Complaint as though fully set forth here.

97. An actual and justiciable controversy exists between Ruthless Studios, on the one hand, and Defendants Dark Age Cinema, Art the Clown and Does 1-10, on the other hand, regarding Ruthless Studios' copyright ownership and interests in *Terrifier 2*, *Terrifier 3* and all derivative works, sequels, the scope of the Art the Clown provision in the Assignment Agreement, Terrifier related or themed and/or TERRIFIER branded merchandise, apparel, videogames, events and related commercial projects, ventures and works (excluding the 2016 *Terrifier* film).

98. Ruthless Studios contends, among other things, that the 2013 agreements conveyed the Terrifier and The 9th Circle properties, their sequel and derivative-work rights, and associated trademark and exploitation rights to Ruthless Pictures; that the later All Hallows' Eve agreements vested additional copyrights and subsequent production and exploitation rights in Ruthless Pictures; and that those rights were later transferred to Ruthless Studios. Ruthless Studios further contends that the Art the Clown provision in the Assignment Agreement does not grant Leone or Defendants the right to make unauthorized Terrifier sequels or to exploit Ruthless Studios' protected Terrifier and All Hallows' Eve express, and at a minimum requires Ruthless Studios' attachment to Art-containing projects produced by Leone or his affiliates, licenses, or assigns.

99. Defendants dispute Ruthless Studios' ownership, priority, and infringement contentions and claim the right to continue exploiting Terrifier 2, Terrifier 3, the TERRIFIER designation and related commercial ventures.

100. A judicial declaration resolving the parties' respective rights is necessary and appropriate to determine the legal relationship at issue and guide ongoing and future exploitation of the property.

**THIRD CLAIM FOR RELIEF**

**False Designation of Origin and Unfair Competition**

**15 U.S.C. § 1125(A)**

**(Against Defendants Dark Age Cinema, LLC, Art the Clown, LLC and Does 1-10, inclusive)**

101. Ruthless Studios incorporates by reference all preceding allegations of the Complaint as though fully set forth here.

102. TERRIFIER is a valid and protectable common-law mark in connection with motion pictures, entertainment services, and related goods and commercial exploitation. Plaintiff's rights derive from Leone's pre-assignment public use of TERRIFIER in connection with the *Terrifier* motion-picture property; the 2013 transfer to Ruthless Pictures of the TERRIFIER trademark rights together with the underlying *Terrifier* property, its associated commercial exploitation rights and goodwill; Ruthless Pictures' and Plaintiff's subsequent actual and authorized use and exploitation of the designation; and Plaintiff's resulting priority over Defendants' challenged unauthorized uses.

103. Before and during Defendants' challenged uses, TERRIFIER had acquired secondary meaning as a designation identifying a single *Terrifier* franchise or source through the pre-2013 public exploitation of the *Terrifier* short, the national and international commercial exploitation of *All Hallows' Eve* incorporating *Terrifier*, the authorized feature-length *Terrifier* production and its distribution and publicity, and the continuing commercial exploitation and promotion of the property thereafter.

104. The mark functions as a source identifier for a continuing Terrifier franchise and related goods and services, not merely as the title of a single isolated expressive work.

105. Without Plaintiff's authorization, Defendants have used and continue to use TERRIFIER in interstate commerce as a mark in connection with Terrifier 2, Terrifier 3, physical and digital media, streaming, advertising, licensing, merchandise, toys, apparel, collectibles, promotional events, and other commercial goods and services.

106. The distinctive TERRIFIER mark/logo used in connection with Terrifier 2, Terrifier 3, and related merchandise is virtually identical to that utilized in the original Terrifier property acquired and exploited by Ruthless Pictures. The TERRIFIER mark appeared in the initial pre-2013 Terrifier short film, pre-2013 Terrifier poster/promotional artwork, and pre-2013 online promotional materials, including its YouTube presentation. The same TERRIFIER mark was included in the original Terrifier film electronic files (MOV/MP4) and promotional artwork delivered to Ruthless Pictures as part of the materials delivery under the 2013 Agreement."

107. Defendants' use of TERRIFIER is source-identifying use. Defendants deploy the designation repeatedly across a film series and collateral commercial goods and services, including substantially the same stylized logo and branding, to identify and distinguish the Terrifier franchise.

108. Defendants' use is likely to cause confusion, mistake, or deception as to affiliation, connection, association, source, sponsorship, or approval of Defendants' films, goods, and services, including by causing consumers to believe that the later films and TERRIFIER-branded goods are authorized by or emanate from the same source that owns and licensed the prior Terrifier property.

109. Plaintiff's Lanham Act claim concerns Defendants' use of TERRIFIER as a source-identifying mark and franchise brand. It does not seek trademark relief merely because Defendants allegedly copied authorship, ideas, or communicative content from Plaintiff's copyrighted works.

//

//

110. Defendants acted knowingly and willfully because Leone executed the rights agreements and, in connection therewith, delivered materials – including video files, artwork and promotional materials – to Ruthless Pictures bearing the TERRIFIER brand, mark and logo, sought Ruthless Pictures' authorization for the one-time film, and later caused or participated in Defendants' unauthorized use of the same designation in commerce.

111. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer loss of control over the TERRIFIER mark and goodwill, lost licensing and business opportunities, and other injury, while Defendants have obtained revenues and profits from their challenged use.

112. Plaintiff is entitled to the remedies available under 15 U.S.C. sections 1116 and 1117, subject to proof and equitable principles, including injunctive relief, Plaintiff's damages, Defendants' profits, costs, and attorneys' fees in an exceptional case. Any accounting or disgorgement is sought solely as a remedy under those provisions and not as an independent cause of action.

**PRAYER FOR RELIEF**

Wherefore, Ruthless Studios requests that the Court enter a judgment in its favor and against Defendants, jointly and severally where applicable, awarding:

1. Copyright remedies according to proof, including monetary relief measured by Ruthless Studios' damages and/or Defendants' profits, and statutory monetary relief to the extent available.

2. A declaratory judgment that Defendants' production, distribution, marketing, licensing, merchandising, and other commercial exploitation of Terrifier 2, Terrifier 3, and related materials are unauthorized to the extent they infringe Plaintiff's copyrights, exclusive derivative-work rights, or trademark rights .

3. An injunction preventing and precluding further dissemination, distribution and exploitation of the copyrighted material and TERRIFIER trademark owned by Ruthless Studios.

4. Recovery and recoupment of Defendants' profits attributable to the trademark infringement pursuant to 15 U.S.C. § 1117(a).

5. Ruthless Studios' actual damages sustained as a result of Defendants' trademark infringement pursuant to 15 U.S.C. § 1117(a);

6. Treble damages pursuant to 15 U.S.C. § 1117(b) due to Defendants' willful infringement;

7. An accounting of all relevant revenues, costs, and profits, and disgorgement of all sums found due and a constructive trust imposed over such amounts.

8. Pre-award and post-award interest to the extent permitted.

9. Attorneys' fees and costs to the extent recoverable under the parties' agreements and applicable law.

10. Such other and further relief as the Court deems just and proper.

Dated: September 18, 2026

EARLY SULLIVAN WRIGHT GIZER & McRAE LLP

By: */s/ Devin A. McRae*

Devin A. McRae
Peter Scott
Attorneys for Plaintiff Ruthless Studios, LLC

## DEMAND FOR JURY TRIAL

Plaintiff Ruthless Studios, LLC hereby demands trial by jury for all issues so triable.

Dated: September 18, 2026

EARLY SULLIVAN WRIGHT
GIZER & McRAE LLP

By: */s/ Devin A. McRae*
Devin A. McRae
Peter Scott
Attorneys for Plaintiff Ruthless Studios, LLC