KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
KATHERINE T. KLEINDIENST (SBN 274423)
kkleindienst@khiks.com
PATRICIA A. MILLETT (SBN 150756)
pmillett@khiks.com
11766 Wilshire Boulevard, Suite 750
Los Angeles, California 90025
Telephone: 310.566.9800
Facsimile: 310.566.9850

LAW OFFICES OF LARRY ZERNER
LARRY ZERNER (SBN 155473)
Larry@ZernerLaw.com
1801 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone: 310.773.3623

Attorneys for Dark Age Cinema, LLC,
Art the Clown, LLC

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

RUTHLESS STUDIOS, LLC, a Delaware limited liability company,

Plaintiff,

vs.

DARK AGE CINEMA, LLC, a New York limited liability company; ART THE CLOWN, LLC, a New Jersey limited liability company; and DOES 1-10, inclusive,

Defendants.

Case No. 2:26-cv-06465 MWC (SKx)

The Hon. Michelle Williams Court

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: November 13, 2026
Time: 1:30 p.m.
Ctrm: 6A

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 13, 2026 at 1:30 pm, in Courtroom 6A of the above-captioned court, located at 350 W. 1st Street, Los Angeles, California 90012, the Honorable Michelle Williams Court presiding, Defendants Dark Age Cinema, LLC and Art the Clown, LLC (collectively, "Defendants") will, and hereby do, move for an order dismissing the following claims alleged in Plaintiff Ruthless Studios, LLC's First Amended Complaint ("FAC"), with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6):

1. Plaintiff's First Claim for Copyright Infringement on the grounds that Plaintiff has not alleged facts stating a plausible claim for copyright infringement against Defendants. Plaintiff's ownership claims to the Art the Clown character and *Terrifier 2* are time-barred and the works at issue are not substantially similar as a matter of law. Fed. R. Civ. P. 12(b)(6).

2. Plaintiff's Second Claim for Declaratory Relief on the grounds that the claim is premised on Plaintiff's First and Third Claims and will be mooted by dismissal of them. Because Plaintiff's copyright ownership claim is time-barred, the *Terrifier* Films are not derivative or infringing of Plaintiff's work as a matter of law, and Plaintiff's trademark claim is barred by laches, there is no controversy that will remain to be adjudicated by the Court. Fed. R. Civ. P. 12(b)(1), 12(b)(6).

3. Plaintiff's Third Claim for False Designation of Origin and Unfair Competition under the Lanham Act on the grounds that Plaintiff fails to allege facts sufficient to state a plausible claim for relief because it is barred by the doctrine of laches. Plaintiff unreasonably delayed more than five years before asserting its claim, and Defendants suffered prejudice as a result. Fed. R. Civ. P. 12(b)(6).

Defendants' Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the FAC, the Declaration of Patricia A. Millett, Defendants'

concurrently filed Request for Judicial Notice and on such further evidence and argument as the Court may lawfully consider in the exercise of its discretion.

This Motion is made following a conference of counsel pursuant to L.R. 7-3, which took place on September 25, 2026. Declaration of Patricia A. Millett, ¶¶ 2-4.

DATED: October 2, 2026

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP

By: /s/ P. Millett

Patricia A. Millett
Attorneys for Dark Age Cinema, LLC, Art the Clown, LLC

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 8
II. PLAINTIFF'S ALLEGATIONS ..... 9
  A. Plaintiff's Copyright Claim ..... 11
  B. Plaintiff's Declaratory Relief Claim ..... 12
  C. Plaintiff's Lanham Act Claim ..... 12
III. LEGAL STANDARD ..... 13
IV. PLAINTIFF'S CLAIMS BASED ON COPYRIGHT OWNERSHIP ARE TIME-BARRED ..... 14
  A. The FAC Alleges a "Close Relationship" Between the Parties ..... 15
  B. Defendants Repudiated Plaintiff's Claimed Ownership ..... 16
V. PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT ..... 18
  A. Plaintiff's Copyright Claim Based on Art the Clown and his Attributes Is Not Plausible ..... 18
  B. The Works At Issue Are Not Substantially Similar ..... 20
    1. The Plots and Sequences of Events Are Different ..... 20
    2. The Characters and Dialogue Are Not Similar ..... 23
    3. The Settings Are Different ..... 24
    4. The Pacing Is Different ..... 24
    5. The Mood and Themes Are Not Similar ..... 24
  C. The "Selection and Arrangement" Allegations Are Not Plausible ..... 25
VI. PLAINTIFF'S LANHAM ACT CLAIM IS BARRED BY LACHES ..... 27
  A. Plaintiff Waited More than Five Years Before Suing ..... 28
  B. Plaintiff's Delay Was Unreasonable ..... 28
  C. Defendants Suffered Prejudice as a Result of Plaintiff's Delay ..... 30
VII. PLAINTIFF'S DECLARATORY RELIEF CLAIM FAILS WITH THE FIRST AND THIRD CLAIMS ..... 31
VIII. CONCLUSION ..... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000) ............ 16

*Ambitious Prods., Inc. v. DVapps, AB*, 2023 WL 3947848 (N.D. Ill. June 12, 2023) ............ 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............ 13

*Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017) ............ 31

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............ 13

*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) ............ 25

*Biani v. Showtime Networks, Inc.*, 153 F.4th 957 (9th Cir. 2025) ............ 20, 23

*Caiz v. Roberts*, 382 F.Supp.3d 942 (C.D. Cal. 2019) ............ 28

*Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108 (N.D. Cal. 2010) ............ 24

*Collier v. McKay*, 761 F.Supp.3d 1300 (C.D. Cal. 2025) ............ 14, 25, 26

*DC Comics v. Towle*, 802 F.3d 1012 (9th Cir. 2015) ............ 19

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987) ............ 13

*E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983) ............ 29, 30


KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

*Eden Film Prods. LLC v. Lockjaw LLC*,
2025 WL 1386018 (C.D. Cal. Apr. 25, 2025) .......... 13, 20, 24

*Feist Pub., Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .......... 18

*Gioeli v. Sega Corp.*,
2025 WL 2740368 (C.D. Cal. Aug. 22, 2025) .......... 17

*Gonzalez v. Planned Parenthood of Los Angeles*,
759 F.3d 1112 (9th Cir. 2014) .......... 13, 19

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) .......... 27, 28, 29

*Marcus v. ABC Signature Studios, Inc.*,
279 F.Supp.3d 1056 (C.D. Cal. 2017) .......... 20

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) .......... 31

*Miller v. Glenn Miller Prods., Inc.*,
454 F.3d 975 (9th Cir. 2006) .......... 30, 31

*Montgomery v. Holland*,
408 F.Supp.3d 353 (S.D.N.Y. 2019) .......... 23

*PBTM LLC v. Football Northwest, LLC*,
511 F.Supp.3d 1158 (W.D. Wash. 2021) .......... 28

*Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*,
894 F.3d 1015 (9th Cir. 2018) .......... 28, 29, 30

*Ricketts v. CBS Corp.*,
439 F.Supp.3d 1199 (C.D. Cal. 2020) .......... 25, 26

*Russell v. Thomas*,
129 F.Supp. 605 (S.D. Cal. 1955) .......... 14

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) .......... 26

*Saul Zaentz Co. v. Wozniak Travel, Inc.*,
627 F.Supp.2d 1096 (N.D. Cal. 2008) .......... 27, 28, 29

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp.*,
733 F.3d 1251 (9th Cir. 2013) .......... 14, 15, 16

*Silva v. Sunich*,
2006 WL 6116645 (C.D. Cal. Sept. 6, 2006) .......... 16, 18

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) .......... 26

*Stone Brewing Co., LLC v. Millercoors LLC*,
445 F.Supp.3d 1113 (S.D. Cal. 2020) .......... 28, 29

*Teledyne Techs., Inc. v. W. Skyways, Inc.*,
78 U.S.P.Q.2d 1203 (T.T.A.B. 2006) .......... 28

*White v. Warner-Tamerlane Pub. Corp.*,
2017 WL 4685542 (C.D. Cal. May 22, 2017) .......... 16

*Yonay v. Paramount Pictures Corp.*,
163 F.4th 685 (9th Cir. 2026) .......... 26

*Zahedi v. Miramax, LLC*,
2022 WL 4596551 (C.D. Cal. Aug. 19, 2022) .......... 15, 16, 18

*Zuill v. Shanahan*,
80 F.3d 1366 (9th Cir. 1996) .......... 15

**Federal Statutes**

15 U.S.C.
§ 1072 .......... 28

17 U.S.C.
§ 507(b) .......... 18

**Other Authorities**

37 C.F.R. § 202.1(a) .......... 20

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This is an action for copyright and trademark infringement relating to the *Terrifier* horror film franchise and its signature villain Art the Clown.

Art the Clown is the creation of Damien Leone ("Leone"), a principal of Defendants Dark Age Cinema, LLC ("Dark Age") and Art the Clown, LLC ("ATC"). Leone conceived of the character and included him in two short films many years ago. In March 2013, Leone sold those two short films to Plaintiff's predecessor, Ruthless Pictures, LLC ("Pictures") for incorporation into a feature-length film called *All Hallows' Eve*. But when he did, Leone expressly carved out Art the Clown from the sale, keeping ownership of the character for himself. This is clear from the Assignment Agreement attached as Exhibit 1 to the First Amended Complaint ("FAC"), which expressly states "[w]ith respect to only the 'Art the Clown' character ('Character') …. as between Owner [Leone] and Company [Pictures], Owner shall own the rights to such Character." (Dkt. 17-1, p.3.)

Leone subsequently did exactly what the Assignment Agreement permitted him to do. With Defendants Dark Age and ATC, he built the *Terrifier* franchise featuring Art the Clown as its central villain. That franchise now includes three feature films—*Terrifier 1*, *Terrifier 2*, and *Terrifier 3*—federally registered trademarks and copyrights, and "extensive TERRIFIER-branded merchandising/licensing arrangements" that resulted in the mark acquiring secondary meaning and goodwill as a source-identifying designation for the franchise. (Dkt. 17 ¶ 6.) Plaintiff Ruthless Studios, LLC ("Plaintiff") admits that it played no part in these efforts. (*Id.* ¶¶ 46, 49, 51.) By its own account, its principal was living "off the grid" while the franchise was being built. (*Id.* ¶¶ 49-50.)

Now that Art the Clown and the *Terrifier* franchise have become a smash success, Plaintiff has resurfaced and wants to rewrite the parties' deal. Even though the agreement clearly states that Leone owns Art the Clown—and even though

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

Defendants have been exploiting the character in feature films and brand deals for more than a decade—Plaintiff now contends that it owns Art the Clown and the feature films *Terrifier 2* and *Terrifier 3* (collectively, the "*Terrifier* Films") as purported derivative works of *All Hallows' Eve*. Plaintiff also claims that the *Terrifier* Films purportedly infringe its copyright in *All Hallows' Eve* and that Defendants' use of the mark TERRIFIER is false designation of origin and constitutes unfair competition under the Lanham Act.

None of Plaintiff's claims are plausible, all of them were filed too late, and they should all be dismissed. Plaintiff's claims based on its alleged ownership interest in the Art the Clown character and *Terrifier* Films are time-barred. Defendants plainly and expressly repudiated Plaintiff's purported ownership in Art the Clown when "Damien Leone's Terrifier 2" was theatrically released on October 6, 2022 without crediting or compensating Plaintiff. Plaintiff's copyright infringement claim also fails because, once Art the Clown is set aside, *All Hallows' Eve* and the *Terrifier* Films share no protectable elements. The works have entirely different plots, characters, settings, dialogue, pacing, moods and themes, and selection and arrangement of elements.

Moreover, the Lanham Act claim is barred by laches because Plaintiff waited more than five years to assert it. Dark Age has held the uncontested, federally registered TERRIFIER trademark since November 2020 (Reg. No. 6,189,719). While Plaintiff sat on its alleged rights, Defendants—relying on federally registered rights that no one had challenged—invested heavily in the brand.

Plaintiff's belated lawsuit is a transparent money-grab based on rights Plaintiff never had and waited a decade to assert. It is totally meritless, and all of Plaintiff's claims should be dismissed with prejudice.

## II. PLAINTIFF'S ALLEGATIONS

Pictures is an independent film sales, marketing, and production company founded by Jesse Baget ("Baget"). (Dkt. 17 ¶¶ 1, 5, 19.) In late 2012 or early 2013,

Pictures learned about two short horror films called "Terrifier" (the "*Terrifier* Short") and "The 9th Circle" (together with the *Terrifier* Short, the "Short Films"), that Leone had created and publicly exhibited. (*Id.* ¶ 22.) Pictures commenced discussions with Leone about purchasing the Short Films and about financing and distributing a feature-length film based on them. Because the Short Films had a combined run time of 35-40 minutes, Pictures proposed incorporating them with new material into a single feature. (*Id.* ¶¶ 24-25.)

In March 2013, Pictures and Leone entered into three written agreements relating to the development and exploitation of the Short Films and the proposed new feature. (Dkt. 17 ¶¶ 26-28.) Under the first, an Assignment Agreement (Ex. 1 to the FAC), Leone transferred ownership of the Short Films and related rights to Pictures for $5,000, with one critical carve-out. (*Id.* ¶ 27; Dkt. 17-1.) Paragraph 3(b)(vii) of the Assignment Agreement states:

> With respect to only the "Art the Clown" character ("Character") contained in the Pictures, Owner [Leone] agrees that, as between Owner and Company [Ruthless Pictures], Owner shall own the rights to such Character. In the event any project containing such Character is produced by Owner, his affiliates, licensees or assigns, Producer shall be attached to such project(s) on terms to be negotiated in good faith between the parties.

(Dkt. 17-1, p. 3.) Leone and Pictures also entered into screenwriting and directing agreements pursuant to which Leone was engaged to write and direct the contemplated feature film, *All Hallows' Eve*. (Dkt. 17 ¶ 28; Dkt. 17-2; Dkt. 17-3.)

*All Hallows' Eve* uses a wrap-around narrative based on a VHS tape found in a trick-or-treat bag to incorporate the Short Films into the new feature. (Dkt. 17 ¶ 37.) Pictures registered copyrights in the film and the screenplay for *All Hallows' Eve* on June 19, 2013. (*Id.* ¶ 38.) Pictures subsequently secured distribution for the film in various territories around the world. (*Id.* ¶ 39.)

In or around 2015, Leone informed Pictures that he intended to make a low-budget "Terrifier" project. (Dkt. 17 ¶ 45.) Leone allegedly asked Pictures to permit him to produce this project "on a 'one-time' basis so that he could generate income

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

while Ruthless Pictures continued seeking financing for a larger Terrifier film." (*Id.*) Pictures claims it agreed to permit Leone to produce the project "as a one-time exception" and did not request compensation for doing so. (*Id.*)

In 2017, Leone advised Pictures that his low-budget TERRIFIER film (*Terrifier 1*) was completed. (Dkt. 17 ¶ 46.) Leone asked Pictures to assist in securing distribution, and Pictures allegedly obliged. (*Id.* ¶ 46.) Thereafter, Leone ceased communicating with Pictures. (*Id.* ¶ 49.)

On or about August 11, 2018, Pictures transferred all of its rights under the Assignment Agreement to Plaintiff. (*Id.* ¶ 48.) Plaintiff subsequently learned that Leone and Dark Age had produced a film called *Terrifier 2*, which had a substantially larger budget than *Terrifier 1* and received theatrical distribution. (*Id.* ¶ 51.) Plaintiff also learned that Leone, Dark Age, and ATC "had been exploiting the TERRIFIER property through numerous commercial ventures, including production of additional Terrifier films, merchandising agreements, licensing arrangements, and promotional events involving Terrifier and the Art the Clown character." (*Id.* ¶ 52.) Plaintiff alleges that it never consented to these activities; nor did it receive any share of revenues generated by them. (*Id.*)

In or around late 2023, Plaintiff learned that Leone and Dark Age were producing another film entitled *Terrifier 3*. (Dkt. 17 ¶ 54.) Around the same time, Plaintiff learned that Leone, Dark Age, and/or ATC had negotiated multiple merchandising deals involving the Art the Clown character. (*Id.* ¶ 56.)

**A. Plaintiff's Copyright Claim**

Plaintiff contends that it owns all copyrights, neighboring rights and "any and all other ownership and exploitation rights" in *All Hallows' Eve* and the Short Films, along with broad rights to exploit the Short Films (including the characters in them) in sequels, remakes and other derivative works. (Dkt. 17 ¶¶ 2, 3, 36.) With respect to the Art the Clown character, Plaintiff contends that it owns the right to exploit the

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

character in "Terrifier" projects, whereas Leone owns "a field for a separate 'Art the Clown' specific exploitation in a non-Terrifier context." (*Id.* ¶ 4.)

Plaintiff alleges that the *Terrifier* Films are unauthorized derivative works and/or sequels to *All Hallows' Eve* and the *Terrifier* Short (Dkt. 17 ¶ 55) and that they violate Plaintiff's copyrights because they feature "the same centrally depicted Art the Clown character and copy a combination of protectable audiovisual expression . . . and the particular selection and arrangement of expressive elements" found in the *Terrifier* Short and *All Hallows' Eve*. (*Id.* ¶ 7.)

**B. Plaintiff's Declaratory Relief Claim**

Plaintiff contends that "[a]n actual and justiciable controversy exists between Ruthless Studios, on the one hand, and Defendants …, on the other hand, regarding Ruthless Studios' copyright ownership and interests in *Terrifier 2*, *Terrifier 3* and all derivative works, sequels, the scope of the Art the Clown provision in the Assignment Agreement, Terrifier related or themed and/or TERRIFIER branded merchandise, apparel, videogames, events and related commercial projects, ventures and works". (Dkt. 17 ¶ 97.) Plaintiff seeks a "judicial declaration resolving the parties' respective rights". (*Id.* ¶ 100.)

**C. Plaintiff's Lanham Act Claim**

Plaintiff alleges that Leone first used the TERRIFIER mark when he released the *Terrifier* Short, before the Assignment Agreement was executed. (Dkt. 17 ¶¶ 22, 73.) Plaintiff contends that it acquired "trademarks (including the existing TERRIFIER mark)" through the Assignment Agreement. (*Id.* ¶¶ 27, 74, 102.)

The FAC alleges that the TERRIFIER mark acquired "secondary meaning as a designation identifying a single *Terrifier* franchise or source through the pre-2013 public exploitation of the *Terrifier* Short, the national and international commercial exploitation of *All Hallows' Eve* incorporating *Terrifier* and the authorized feature-length *Terrifier* production and its distribution and publicity and the continuing commercial exploitation and promotion of the property thereafter." (*Id.* ¶ 103.) It

also alleges that the mark "functions as a source identifier for a continuing Terrifier franchise and related goods and services, not merely as the title of a single isolated expressive work." (*Id.* ¶ 104.) Notably, the FAC does not allege that consumers understand the TERRIFIER mark to be associated with Plaintiff. (*Id.* ¶ 79 [alleging that consumers "understood the designation as identifying a single Terrifier franchise or source, whether or not they knew the legal identity of that source"].)

Plaintiff claims that Defendants' "repeated use of the identical TERRIFIER designation and substantially the same stylized logo across successive films and collateral goods functions as an umbrella source identifier for Defendants' products and services" (Dkt. 17 ¶ 81) and is likely to confuse consumers into believing that "the later films and TERRIFIER-branded goods are authorized by or emanate from the same source that owns and licensed the prior Terrifier property." (*Id.* ¶ 108.)

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not include detailed factual allegations, it must plead more than labels and conclusions. *Eden Film Prods. LLC v. Lockjaw LLC* ("*Eden Film*"), 2025 WL 1386018, at *1 (C.D. Cal. Apr. 25, 2025). Documents attached to a complaint are part of the pleading and may be considered in determining whether the plaintiff has stated a plausible claim. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). While the Court must accept all material allegations of fact as true, it need not accept as true allegations that contradict exhibits attached to the complaint or matters of which the Court may take judicial notice. *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014).

In copyright cases, when both the copyrighted work and the allegedly infringing works are before the Court and available for comparison, non-infringement can be determined on a motion to dismiss. *See, e.g.*, *Eden Film*, 2025

WL 1386018, at *2 ("[C]ourts in this district regularly conduct infringement analyses at the pleading stage.").[1]

A complaint may also be dismissed when an affirmative defense is apparent on the face of the pleading. *Collier v. McKay*, 761 F.Supp.3d 1300, 1314 (C.D. Cal. 2025); *Seven Arts Filmed Ent. Ltd. v. Content Media Corp.* ("*Seven Arts*"), 733 F.3d 1251, 1254 (9th Cir. 2013) (statute of limitations defense apparent from face of the complaint "may properly be raised in a motion to dismiss"); *Russell v. Thomas*, 129 F.Supp. 605, 605 (S.D. Cal. 1955) (laches "apparent on the face of the complaint" may be asserted on a motion to dismiss).

## IV. PLAINTIFF'S CLAIMS BASED ON COPYRIGHT OWNERSHIP ARE TIME-BARRED.

Plaintiff's copyright infringement and declaratory relief claims are time-barred because the gravamen of them is Plaintiff's claim that it owns copyright interests in Art the Clown and the *Terrifier* Films. (Dkt. 17 ¶¶ 32-35, 55, 59, 87, 90, 97.) Plaintiff's declaratory relief claim makes this explicit. Plaintiff asserts, "An actual and justiciable controversy exists . . . regarding Ruthless Studios' copyright ownership and interests in *Terrifier 2*, *Terrifier 3* and all derivative works, sequels, the scope of the Art the Clown provision in the Assignment Agreement …." (Dkt. 17 ¶ 97; *see also id.* ¶ 55 ["The *Terrifier 2* and *Terrifier 3* films are clearly derivative works of, and/or sequels to, the original Terrifier short film, the rights to which are owned exclusively by Ruthless Studios."].) Moreover, Plaintiff's attempt to identify "specific protectable similarities" between Plaintiff's works and the

[1] Defendants manually filed DVD copies of *All Hallows' Eve* (which includes the Short Films), *Terrifier* 2 and *Terrifier* 3. Defendants respectfully request that the Court take judicial notice of these works as matters incorporated into Plaintiff's FAC and not subject to reasonable dispute. *See* Defendants' concurrently filed Request for Judicial Notice ("RJN").

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

*Terrifier* Films hinges on Art the Clown's inclusion in the films. Thus, if Plaintiff cannot claim ownership in Art the Clown, its copyright infringement claim fails.

Ninth Circuit law holds that claims for copyright *ownership*, as distinct from claims of *infringement*, "accrue only once, 'when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.'" *Seven Arts*, 733 F.3d at 1254. In *Seven Arts*, the Ninth Circuit joined other circuits in holding that "an untimely ownership claim will bar a claim for copyright infringement where the gravamen of the dispute is ownership, at least where … the parties are in a close relationship." *Id.* at 1258. For good reason: First, "allowing infringement claims to establish ownership where a freestanding ownership claim would be time-barred would permit plaintiffs to skirt the statute of limitations . . . and lead to results that are 'potentially bizarre[.]'" *Id.* at 1255. Second, it is inequitable to allow a putative copyright owner "to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort. 'Delay under such circumstances allows the [putative] owner to speculate without risk with the other's money.'" *Zuill v. Shanahan*, 80 F.3d 1366, 1370-71 (9th Cir. 1996).

Thus, where the gravamen of the claim is ownership, the three-year statute of limitations bars a copyright claim if (1) the parties are in a close relationship and (2) there has been an express repudiation of the plaintiff's ownership. *Zahedi v. Miramax, LLC*, 2022 WL 4596551, at *6 (C.D. Cal. Aug. 19, 2022). Both circumstances exist here.

**A. The FAC Alleges a "Close Relationship" Between the Parties.**

A contractual relationship relating to the purported ownership rights at issue has consistently been found sufficient to establish a "close relationship." *See Seven Arts*, 733 F.3d at 1256-58 (finding a "close relationship" where one defendant and the plaintiff's predecessors-in-interest entered into a "first look" deal for movies);

*Zahedi*, 2022 WL 4596551, at *7 (finding a "close relationship" where plaintiff had a business relationship with the defendant's predecessor-in-interest); *White v. Warner-Tamerlane Pub. Corp.*, 2017 WL 4685542, at *3 (C.D. Cal. May 22, 2017) ("Like the parties in *Seven Arts*, Plaintiffs and Defendants had a prior business relationship, and entered into an agreement for the track at issue in this case.").

The FAC includes extensive allegations alleging such a contractual and business relationship between Pictures (Plaintiff's predecessor-in-interest), Plaintiff, and Leone (Defendants' principal and alleged alter-ego). (*See, e.g.*, Dkt. 17 ¶¶ 3-4, 13-14, 22-28, 30, 44-48, 53.) For example, Plaintiff alleges that it acquired the copyrights at issue through the Assignment Agreement Pictures entered into with Leone. (Dkt. 17 ¶ 2.) Plaintiff also alleges that it has continued to perform under the Assignment Agreement from "approximately 2016 through the present" by paying Leone royalties from the exploitation of *All Hallows' Eve.* (*Id.* ¶ 53.) And Plaintiff alleges it has an ongoing right to be attached to any projects produced by Leone or his affiliates featuring Art the Clown. (*Id.* ¶ 35.) These allegations more than establish the "close relationship" necessary to bar Plaintiff's ownership claim.

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

**B. Defendants Repudiated Plaintiff's Claimed Ownership.**

In the Ninth Circuit, "copyright registration, failure to provide credit, and failure to pay royalties can show plain and express repudiation" of a party's ownership sufficient to start the statute of limitations running. *Zahedi*, 2022 WL 4596551, at *7. *See also Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000).

In *Aalmuhammed*, the Ninth Circuit found movie credits that listed the plaintiff only as an "Islamic technical consultant" in a location far below the more prominent names plainly and expressly repudiated plaintiff's purported copyright ownership. *Id.* at 1231. Similarly, in *Silva v. Sunich*, 2006 WL 6116645 (C.D. Cal. Sept. 6, 2006), this District found that the defendants' failure to credit the plaintiff as the creator of an animated character was a plain and express repudiation of the plaintiff's claimed ownership in the character. *Id.* at *7 ("The failure to denote

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

authorship within the credits of a film is a form of express repudiation.”). And last year, in *Gioeli v. Sega Corp.*, 2025 WL 2740368 (C.D. Cal. Aug. 22, 2025), this District found that the failure to include the plaintiff in the credits and copyright notice for a video game was a plain and express repudiation of ownership. *Id.* at *4 (“When *Sonic Adventure 2* was released in 2001, Plaintiff was on notice of his co-ownership claim—surely, if he was a co-owner, he would be at least mentioned in the ‘Music and Lyrics’ credits or copyright notice …. But he was not mentioned at all.”).

Allegations in the FAC and documents of which the Court may take judicial notice confirm that Defendants plainly and expressly repudiated Plaintiff’s purported ownership of Art the Clown and *Terrifier 2* more than three years before Plaintiff sued. One such repudiation occurred on October 6, 2022, when Defendants released *Terrifier 2*—actually called “Damien Leone’s Terrifier 2” in the credits and official artwork[2]—without crediting Plaintiff and without requesting authorization or a license to use Plaintiff’s copyrighted works. (RJN and manually filed DVDs; Dkt. 17 ¶ 51.)[3] Defendants also repudiated Plaintiff’s alleged ownership by filing copyright registrations for the *Terrifier 2* screenplay (effective January 19, 2019), the *Terrifier 2* motion picture (effective September 13, 2022), and “a photograph of the lead character Art the Clown in the film Terrifier” (effective April 13, 2019) without crediting Plaintiff. (RJN and Exs. 1, 2 and 3 to the Millett Decl.)

According to the FAC, Leone entirely “ceased communicating with [Plaintiff] regarding Terrifier projects” after 2018 and “never informed [Plaintiff] that he was producing or developing additional Terrifier films”, much less provided Plaintiff

---

[2] *Terrifier 3* is likewise called “Damien Leone's Terrifier 3” in its credits. (*See* RJN and manually filed DVD).

[3] The Court may take judicial notice of the fact that *Terrifier 2* was theatrically released in the United States on October 6, 2022, as a fact that is not reasonably subject to dispute. (RJN and Exs. 5, 6 and 8 to Millett Decl.)

with its claimed contractual right to be attached. (Dkt. 17 ¶¶ 49, 51.) Defendants also allegedly entered into merchandise and licensing arrangements for the Art the Clown character without notifying Plaintiff or getting its consent, and never paid Plaintiff a share of resulting revenues. (*Id.* ¶¶ 52, 56.) This alleged conduct was yet another express repudiation of Plaintiff's purported ownership rights. *See, e.g.*, *Zahedi*, 2022 WL 4596551, at *8 (where plaintiff knew defendant was exploiting photograph without giving him credit or royalties, failure to bring timely suit to assert ownership rights was "fatal to his case."); *Silva*, 2006 WL 6116645, at *5-6 (plaintiff's claim of ownership accrued when he became aware that defendants were selling product bearing the character he created without paying him royalties).

Given the foregoing, Plaintiff's ownership claim accrued by October 6, 2022, at the latest, when *Terrifier 2* was theatrically released. Accordingly, to be timely, Plaintiff had to file its copyright and declaratory relief claims asserting ownership rights to Art the Clown and/or *Terrifier 2* by October 2025. (17 U.S.C. § 507(b).) This case was not filed until June 2026 and is therefore time-barred. (Dkt. 1.)

## V. PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM FOR COPYRIGHT INFRINGEMENT

To state a claim for copyright infringement, a plaintiff must allege two things: (1) ownership of a valid copyright and (2) that the defendant copied constituent elements of the plaintiff's work that are original. *Feist Pub., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The FAC fails both elements.

### A. Plaintiff's Copyright Claim Based on Art the Clown and his Attributes Is Not Plausible.

It is axiomatic that a plaintiff cannot state a plausible copyright claim based on works it does not own. *Feist*, 499 U.S. at 361 (ownership is threshold element of copyright claims).

The plain language of the Assignment Agreement (Ex. 1 to the FAC) proves that Plaintiff's copyright claims based on its purported ownership of Art the Clown

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

are not plausible. Paragraph 3(b)(vii) of the Assignment Agreement very clearly provides that Leone "shall own the rights" to the character. (Dkt. 17, Ex. 1, p. 3.) There is no language in the provision purporting to limit Leone's rights to "non-Terrifier" projects (whatever that means). Plaintiff's allegations about purportedly split rights to the character cannot be squared with the plain language of the Agreement and therefore need not be accepted as true. *Gonzalez*, 759 F.3d at 1115.[4]

But, even if Plaintiff's mischaracterization of the Assignment Agreement were credited (and it should not be), Plaintiff's claim that it owns Art the Clown is not plausible because it is time-barred as discussed above. Because Plaintiff does not own Art the Clown, and cannot assert an ownership claim, its copyright claim based on the character's signature attributes and behaviors is likewise not plausible.

Under Ninth Circuit law, in order to be protectable, a character must have physical and conceptual qualities and be "sufficiently delineated" to be recognizable whenever it appears, displaying "consistent, identifiable character traits and attributes." *DC Comics v. Towle*, 802 F.3d 1012, 1019-21 (9th Cir. 2015). The copyrighted character Art the Clown therefore necessarily includes the traits and attributes that make him recognizable, including the "exaggerated facial expression, mime-like mannerisms, sadistic playfulness, violent conduct, and recurring blend of grotesque horror and dark comedy" and "use of bodily fluids, blood or excrement to write words or his name" alleged by Plaintiff. (Dkt. 17 ¶¶ 62, 63(m).) Since Plaintiff does not own Art the Clown, it likewise does not own any copyright interest in his defining attributes and cannot plausibly state a claim based on them.

[4] Contrary to the position taken in this case, Plaintiff conceded in the Demand for Arbitration it filed against Leone (referenced in FAC n.1) that Leone retained all rights to Art the Clown. (RJN and Ex. 7 to Millett Decl., ¶¶ 2, 21.) Nowhere in the Demand does Plaintiff say anything about Leone's rights to the character being limited to "non-*Terrifier*" projects. Instead, Plaintiff alleges that it had a contractual right to be attached if Leone made future projects featuring Art the Clown. (*Id.*)

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

**B. The Works At Issue Are Not Substantially Similar**

The Ninth Circuit uses a two-part test for substantial similarity, assessing "intrinsic" and "extrinsic" similarities. *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 963 (9th Cir. 2025). The intrinsic test is reserved for the jury, but the extrinsic test may be decided by the court as a matter of law, including on a motion to dismiss. *Eden Film*, 2025 WL 1386018, at *2. *See also Marcus v. ABC Signature Studios, Inc.*, 279 F.Supp.3d 1056, 1064 (C.D. Cal. 2017).

The extrinsic test considers objective similarities in the works, focusing solely on the plaintiff's protectable expression. Unprotectable elements, including bare ideas, material in the public domain and *scènes à faire* (stock or standard features commonly associated with a genre) are filtered out. *Biani*, 153 F.4th at 963; *Eden Film*, 2025 WL 1386018, at *3.[5] An objective comparison of the protectable expression that Plaintiff owns (which, as discussed, does not include Art the Clown) and the *Terrifier* Films proves they are not substantially similar as a matter of law. *See* DVDs submitted with Defendants' Notice of Manual Filing.

**1. The Plots and Sequences of Events Are Different.**

A comparison of the plot of *All Hallows' Eve*, the *Terrifier* Short, and the *Terrifier* Films shows their protectable expression to be entirely different.

***(a) All Hallows' Eve.***

*All Hallows' Eve* is an anthology. It uses the wraparound narrative of a woman babysitting two children on Halloween night. One of the children finds an

---

[5] In paragraph 61, under the heading "Specific Protectable Similarities Between Plaintiff's Works and Terrifier 2", Plaintiff avers that *Terrifier 2* "uses the same TERRIFIER title and substantially the same distinctive titled-card treatment" associated with the *Terrifier* Short. As expressly provided in 37 C.F.R. § 202.1(a), "[w]ords and short phrases such as names, titles, and slogans … lettering or coloring …" are not subject to copyright. 37 C.F.R. § 202.1(a). Consequently, the titles of the works must also be filtered out in conducting a substantial similarity analysis.

unmarked VHS tape in his bag of trick-or-treat candy, which the three watch over the course of the evening. The VHS tape contains three unrelated short films.

The first short film is "The 9th Circle" (though the title is not shown in *All Hallows' Eve*). In "The 9th Circle", Art the Clown drugs a woman he meets in a train station. She is then abducted into a satanic cult, where she is held captive with other women, guarded by a grotesque, cleaver-wielding monster, and eventually sacrificed to the devil himself. The second short on the VHS tape (the "Alien Film") follows a woman who has recently moved to a house in the country. An alien creature breaks into the home and stalks and attacks her. Art the Clown does not appear in the Alien Film except in a painting revealed in the final shot. The third is the *Terrifier* Short (the title is not shown in *All Hallows' Eve*). In the *Terrifier* Short, a young woman stops at a remote gas station and encounters Art the Clown. Art kills the gas station attendant and then follows the woman in a cat-and-mouse car chase before killing her and a good Samaritan who tried to help her.

*All Hallows' Eve* intersperses footage from the three short films with scenes showing typical interactions between a babysitter and kids. At the end of *All Hallows' Eve*, the babysitter sees Art the Clown reflected on the television screen after he has apparently killed the children in her care off screen.

**(b) The *Terrifier* Films.**

*Terrifier 2* and *Terrifier 3* are not anthologies and do not use a wrap-around device like the VHS tape. The films are a serialized saga about Sienna Shaw, whose family history, relationship with her brother, supernatural development and continuing struggle against Art the Clown drive the plots of both films. *Terrifier 2* focuses on Sienna and her younger brother Jonathan over the days leading to Halloween, as they cope in the aftermath of their father's suicide. A sketchbook of drawings done by Sienna's father is used as a plot device to foretell key events in the story, including a winged angel-warrior costume that Sienna creates and wears.

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

Art the Clown, paired with a demonic girl-clown, stalks Sienna and her brother and their friends and family, killing their mother among other victims.[6]

In the finale, Sienna confronts Art in a haunted fun house called "the Terrifier" and the two battle. Sienna decapitates Art with a sword given to her by her father. Art appears to be dead, and his head is carried off by the demonic girl-clown. Sienna and Jonathan both survive.

*Terrifier 3* picks up the story five years later, at Christmas. Sienna, traumatized from the events in *Terrifier* 2, has been in and out of psychiatric care and is released to spend Christmas with her family. Art the Clown is resurrected and wears a Santa suit as he massacres a family in their home, the patrons of a bar, and kids at a shopping mall. Sienna realizes that Art is back and returns to the "Terrifier" haunted fun house to retrieve her sword, which she wraps up as a Christmas package and hides behind the tree in her aunt and uncle's home.

Art breaks into the house and kills Sienna's uncle, aunt, and brother. A demon inhabiting the corpse of Victoria, a character from Defendants' film *Terrifier 1*, unsuccessfully tries to enter Sienna's soul. Sienna's young cousin, Gabby, tricks Art into giving Sienna the package containing her sword. Sienna impales Victoria's corpse and kills the demon. Art comes at Sienna with a chain saw and they fight. A hole opens in the floor and Gabby falls in. Sienna uses her sword to try and pull Gabby up. Sienna holds the blade and it makes deep cuts in her hands. Gabby falls into the hole, taking the sword with her. Art disappears out the open window into the snow. Sienna looks at the deep cuts on her hands and they instantly heal.

---

[6] The blood and gore associated with the killing of characters in the *Terrifier* Films cannot be the basis for finding substantial similarity because such elements, individually or collectively, are *scènes à faire* in the horror/slasher film genre. *See, e.g., Ambitious Prods., Inc. v. DVapps, AB*, 2023 WL 3947848, at *5 (N.D. Ill. June 12, 2023) (blood stains and blood spatter are scenes a faire in the horror genre).

As can be seen, the detailed plots and sequence of events in the *Terrifier* Films are not at all similar to the babysitter story in *All Hallows' Eve*, or the simple slasher/car chase story of the *Terrifier* Short.

**2. The Characters and Dialogue Are Not Similar.**

Setting aside Art the Clown, Plaintiff does not allege that *any* characters or *any* dialogue in the works are substantially similar. (Dkt. 17 ¶¶ 61-72.) Nor could it. The characters in *All Hallows' Eve* (and the short films it incorporates) are generic archetypes, who are unnamed and are thinly developed: a babysitter, two elementary-school-aged children, young women in dangerous settings, a gas station attendant, a good Samaritan, satanic demons, and an alien. Such stock characters are not entitled to copyright protection. *See Montgomery v. Holland*, 408 F.Supp.3d 353, 363 (S.D.N.Y. 2019) ("Stock characters and basic character types are not entitled to copyright."). And the villains win. Most of the non-villains die within minutes of appearing on screen.

By contrast, *Terrifier 2* has multiple complex and well-developed characters. The story centers on Sienna Shaw, a high school girl, and her brother Jonathan, who is in middle school. Neither Sienna, nor her family, history, supernatural role, or character arc has any counterpart in Plaintiff's works. Supporting characters in *Terrifier 2* include Sienna's mother, Sienna's friends, the clerk at a costume store, a singing female clown (not scary), and a demonic girl-clown who partners with Art.

Sienna is the protagonist in *Terrifier 3* and the story again revolves around her and her brother. Other significant characters include Sienna's Aunt Jess, Uncle Greg, and cousin Gabby, Jonathan's college roommate Cole, Cole's girlfriend Mia (who is a true-crime podcaster) and the demon inhabiting Victoria's corpse.

Thus, Plaintiff has not shown, and cannot show, that the works' characters are substantially similar. *See Biani*, 153 F.4th at 964 (affirming dismissal where "a cursory examination of the works' characters 'exposes many more differences than similarities'").

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

**3. The Settings Are Different.**

There are no distinctive settings that appear in both *All Hallows' Eve* and the *Terrifier* Films. Nor has Plaintiff alleged otherwise. *All Hallows' Eve* unfolds entirely in a well-kept, brightly lit suburban home. The incorporated short films are set in a train station and dungeon ("The 9th Circle"), a dark country house (the Alien Film), and a rural gas station and road (the *Terrifier* Short). *Terrifier 2* and *Terrifier 3* unfold in numerous settings not found in *All Hallows' Eve,* including a lab, a laundromat, the main characters' schools, a night club, a haunted fun house (called The Terrifier), a college dorm, a fraternity house, a bar, a shopping mall, an abandoned house, and a mental hospital.

**4. The Pacing Is Different.**

"The time period within which the movie is set is a factor for determining the pace of the movie." *Campbell v. Walt Disney Co.*, 718 F.Supp.2d 1108, 1115 (N.D. Cal. 2010). *All Hallows' Eve* and the incorporated shorts each unfold over a period of a few hours. In contrast, *Terrifier 2* opens the same night as the end of Defendants' *Terrifier 1*, but the rest of the movie jumps to one year later and takes place over multiple days leading up to Halloween night. *Terrifier 3* primarily unfolds over the course of several days just before Christmas, but also includes flashbacks to events occurring five years earlier (just after Sienna decapitated Art in the haunted fun house) and to an interaction between Sienna and her dad when Sienna was younger. *See Eden Film*, 2025 WL 1386018, at *7 (pacing was different where one work was linear and the other operated in distinct timelines). Both *Terrifier 2* and *Terrifier 3* have daytime scenes that have no analogue in Plaintiff's works.

**5. The Mood and Themes Are Not Similar.**

All of the works are horror films and necessarily share the tense and scary mood and good vs. evil framing that commonly exists in the genre. But "'[a] general mood that flows "naturally from unprotectable basic plot premises" is not entitled to

protection.'" *Collier*, 761 F.Supp.3d at 1310 ("A comedic, farcical, ironic, or satirical mood is far too general to merit copyright protection."). *See Ricketts v. CBS Corp.*, 439 F.Supp.3d 1199, 1213-15 (C.D. Cal. 2020) (finding "fish-out-of water" theme is not protectable and arises naturally from premise of a poor, young, black man attending a rich white school; and racism and poverty themes are general and unprotectable).

The themes of Plaintiff's works and the *Terrifier* Films are entirely different. In *All Hallows' Eve* and the *Terrifier* Short, evil wins when the protagonists die. In the *Terrifier* Films, good prevails over evil when Sienna decapitates Art the Clown in *Terrifier* 2 and when she resists the demon attempting to enter her soul and then kills it in *Terrifier* 3. Sienna does not die, but survives, with her wounds being miraculously healed at the end of *Terrifier* 3.

The *Terrifier* Films also layer on subthemes that are not present in *All Hallows' Eve*. These include themes of family support and struggle after a suicide, coping in the wake of mental illness and trauma, and commentary on public (and media) fascination with true crime and tragedy.

In short, when compared objectively under the extrinsic test, Plaintiff's works and the *Terrifier* Films are wholly different, not substantially similar. Plaintiff's copyright infringement claim is thus not plausible as a matter of law. And its claims based on the purported violation of its right to prepare derivative works also fail. *Berkic v. Crichton*, 761 F.2d 1289, 1291 n.1 (9th Cir. 1985) ("If the plaintiff cannot show a substantial similarity between the defendants' work and his own, he cannot prevail on a claim for alleged violations of his right to prepare derivative works.").

**C. The "Selection and Arrangement" Allegations Are Not Plausible**

The FAC concedes that the purported similarities between Plaintiff's works and the *Terrifier* Films (e.g., a Halloween-night setting, use of a black bag to carry tools, use of a hypodermic needle to drug a victim, demonic or unnaturally glowing eyes, mutilated victims, honking a horn, victims pursued through an abandoned

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

building, etc.), taken individually, are unprotectable horror tropes. (Dkt. 17 ¶¶ 63-64.) But Plaintiff claims that its selection and arrangement of such tropes is sufficiently unique to be protected under copyright law. (Dkt. 17 ¶ 64.) However, the FAC does not even attempt to explain how the "selection and arrangement" of the abstract tropes identified are shared between the works or that their compilation is sufficiently original to be protectable expression.

While courts have held that a combination of unprotectable elements may be protected by copyright in limited circumstances, the selection and arrangement of elements must be numerous enough and "original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003). *See also Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1075 (9th Cir. 2020) ("a selection and arrangement copyright is infringed only where the works share, in substantial amounts, the 'particular,' *i.e.*, the 'same,' combination of unprotectable elements"). Indeed, the Ninth Circuit recently confirmed that for selection and arrangement to be substantially similar, "the works must share a 'pattern, synthesis, or design' that is both 'particular' and 'coherent.'" *Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 697 (9th Cir. 2026).

Here, the FAC does not allege a particular and coherent pattern, synthesis, or design of elements shared by the works. Nor could it. A comparison of the works proves that no sufficiently unique "selection and arrangement" of horror tropes from *All Hallows' Eve* or the *Terrifier* Short was copied in the *Terrifier* Films. *See, e.g.*, *Collier*, 761 F.Supp.3d at 1313-14 ("A 'compilation of random similarities scattered throughout the works' does not suffice."); *Ricketts*, 439 F.Supp.3d at 1221 (rejecting selection and arrangement argument based on random similarities or similarities that flow from the basic plot). Moreover, many elements identified by Plaintiff are not even present in all of the works. For example, *Terrifier* 3 does not have a Halloween-night setting or any victims trapped or pursued in an abandoned building

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

or basement. Instead, *Terrifier* 3 is set at Christmas and its victims are attacked in homes decked out for the holidays, a bustling shopping mall and a fraternity house.

Plaintiff attempts to cast the use of a "child-centered holiday" setting (*i.e.*, Halloween and Christmas) as a protectable element by characterizing it as a "holiday-disguise structure" that allowed Art the Clown to appear among unsuspecting people in costume. (Dkt. 17 ¶¶ 63(b) and 69.) The argument is unavailing both because holiday settings and characters wearing costumes are abstract and generic unprotectable ideas, and because *All Hallows' Eve* does not use the supposed "holiday-disguise structure." There, Art the Clown never mingles undetected with the babysitter or children (or anyone else for that matter).

Moreover, many of the elements that Plaintiff alleges are part of its "selection and arrangement" are actually attributes and/or signature behaviors of the Art the Clown character, which Plaintiff does not own. (Dkt. 17 ¶ 63(c), (k), (l), (m), (n).)

Plaintiff's failure to identify protectable similarities between the works is not a pleading issue. Review of the works at issue demonstrates that the *Terrifier* Films are not substantially similar to *All Hallows' Eve* or the incorporated Short Films as a matter of law. Plaintiff's copyright infringement claim should therefore be dismissed without leave to amend.

## VI. PLAINTIFF'S LANHAM ACT CLAIM IS BARRED BY LACHES.

Laches is a defense to claims for unfair competition and false designation of origin under the Lanham Act. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.* ("*Jarrow*"), 304 F.3d 829, 835 (9th Cir. 2002); *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F.Supp.2d 1096, 1109 (N.D. Cal. 2008). It applies when (1) the plaintiff unreasonably delays in bringing suit, and (2) the defendant suffered prejudice because of the delay. *Jarrow*, 304 F.3d at 835. The face of the FAC and matters subject to judicial notice establish both elements. Indeed, Plaintiff itself pleaded the delay and the resulting prejudice.

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

**A. Plaintiff Waited More than Five Years Before Suing.**

In determining whether a plaintiff unreasonably delayed in filing suit, the Court first assesses the length of delay, measured from the time the plaintiff knew or should have known about its potential cause of action. *Saul Zaentz Co.*, 627 F.Supp.2d at 1109. Under the "knew or should have known" standard, laches applies when a plaintiff has constructive notice of its potential claim. *Id.* at 1109-10.

By statute, a party's registration of a trademark on the principal register "shall be constructive notice of the registrant's claim of ownership." 15 U.S.C. § 1072. Documents of which the Court may take judicial notice establish that Dark Age was issued a federal registration for the TERRIFIER mark (Reg. No. 6,189,719) on November 3, 2020. (RJN and Ex. 4 to Millett Decl.)[7] Plaintiff had constructive notice of its potential Lanham Act claim no later than that date. *Teledyne Techs., Inc. v. W. Skyways, Inc.*, 78 U.S.P.Q.2d 1203 (T.T.A.B. 2006). *See Stone Brewing Co., LLC v. Millercoors LLC*, 445 F.Supp.3d 1113, 1140 (S.D. Cal. 2020). Because Plaintiff did not file this action until June 12, 2026 (Dkt. 1), its period of delay is more than five years.

**B. Plaintiff's Delay Was Unreasonable**

For laches, the reasonableness of a plaintiff's delay is considered in light of the statute of limitations period of the most analogous state law claim. *Jarrow*, 304 F.3d at 835-36. A strong presumption of laches applies when a complaint is filed after the applicable limitations period expires. *Id.* at 835; *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018). In cases alleging

[7] Records of administrative bodies, including the USPTO, are properly subject to judicial notice. *Caiz v. Roberts*, 382 F.Supp.3d 942, 947 (C.D. Cal. 2019). *See also PBTM LLC v. Football Northwest, LLC*, 511 F.Supp.3d 1158, 1170 (W.D. Wash. 2021) (trademark registration applications subject to judicial notice and consideration in connection with 12(b)(6) motion).

ongoing violations, the presumption of laches "is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period." *Jarrow*, 304 F.3d at 837.

The most analogous period of limitations here is California's four-year statute governing claims for trademark infringement. *Stone Brewing*, 445 F.Supp.3d at 1140; *Saul Zaentz,* 627 F.Supp.2d at 1114. As Plaintiff's delay was more than five years, laches is presumptively applicable. *Pinkette*, 894 F.3d at 1025.

Courts assessing the reasonableness of a party's delay also consider the six factors identified in *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604, 607 (9th Cir. 1983): (1) strength and value of the trademark rights asserted; (2) plaintiff's diligence in enforcing its mark; (3) harm to the senior user if relief is denied; (4) good faith ignorance by the junior user; (5) competition between the senior and junior users; and (6) extent of harm suffered by the junior user because of the senior user's delay. *Saul Zaentz*, 627 F.Supp.2d at 1113. Here, based on the FAC's allegations and matters subject to judicial notice, these factors bolster the strong presumption of laches created by Plaintiff's five-year delay.

Plaintiff does not contend that the TERRIFIER mark acquired secondary meaning associating it *with Plaintiff*. Instead, Plaintiff alleges that the mark acquired secondary meaning as "a source-identifying designation for a continuing motion-picture property and related entertainment goods and services." (Dkt. 17 ¶ 79). But the FAC admits that Plaintiff was not involved in *Terrifier 1*, *Terrifier 2*, or *Terrifier 3* and therefore is not the "source" of those films. (Dkt. 17 ¶¶ 6, 45). Moreover, contrary to Plaintiff's allegations, the TERRIFIER mark is never shown in *All Hallows' Eve*. (*See* manually filed DVD). And Plaintiff does not allege that it released any *Terrifier* films after *All Hallows' Eve* was released. Because Plaintiff did not use TERRIFIER as a source-identifying mark for motion pictures or related merchandise, its purported rights (if any) are weak and it will not suffer cognizable harm if its claimed rights are denied.

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

Plaintiff was not diligent in enforcing its purported rights and remained silent for years, even after it admittedly knew about Defendants' use of the TERRIFIER mark and their significant investment therein. *See* Section VI.C, *infra*. Plaintiff's silence coupled with Defendants' open use of the mark tilts the remaining *E-Systems* factors in Defendants' favor. *Pinkette*, 894 F.3d at 1028-29 (good faith of junior user established by open use of mark and prejudice established by the investment of resources during period of delay).

**C. Defendants Suffered Prejudice as a Result of Plaintiff's Delay.**

Prejudice is established where the defendant invested money to expand its business or entered into transactions based on its presumed rights during the period of delay and also where the defendant may incur liability as a result of transactions entered into during the delay. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999-1000 (9th Cir. 2006). Both circumstances are alleged here. The FAC avers:

- Leone "began producing and exploiting Terrifier-related projects independently and without the involvement of (or notice to) Ruthless through the umbrella of Defendants Dark Age Cinema, LLC and Art the Clown, LLC" after Leone allegedly ceased communicating with Plaintiff in 2018. (Dkt. 17 ¶¶ 46-49.)
- Leone and Dark Age produced and released *Terrifier 2* (which Plaintiff avers had a budget that was "substantially larger" than *Terrifier 1*'s $35,000 budget) during the period Baget was living in a remote area (2019 through 2023). (*Id.* ¶¶ 50, 51.)
- Leone and Defendants exploited the TERRIFIER mark in "numerous commercial ventures, including production of additional Terrifier films, merchandising agreements, licensing arrangements, and promotional events involving Terrifier and the Art the Clown character" during the period Baget was living in a remote area. (*Id.* ¶ 52.)

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

- Defendants produced *Terrifier 3* and negotiated multiple merchandising deals involving Art the Clown by late 2023. (*Id.* ¶¶ 54, 56.)

These allegations establish that while Plaintiff sat on its purported rights, Defendants invested substantial resources developing their TERRIFIER brand and were therefore prejudiced. This prejudice is compounded by the relief Plaintiff now seeks: damages, profits, and a constructive trust arising from the films and merchandising deals Defendants made during Plaintiff's silence. (Dkt. 17 ¶¶ 105, 112). That is precisely the second form of prejudice recognized in *Miller*. 454 F.3d at 999-1000.

Because unreasonable delay and prejudice are both apparent on the face of the FAC and matters subject to judicial notice, Plaintiff's Third Claim for Relief is barred by laches and should be dismissed with prejudice.

**VII. PLAINTIFF'S DECLARATORY RELIEF CLAIM FAILS WITH THE FIRST AND THIRD CLAIMS.**

Plaintiff's Second Claim for Declaratory Relief is based on the same substantive allegations as its First and Third Claims. (*See* Dkt. 17 ¶¶ 97-99.) Plaintiff's declaratory relief claim will thus be moot upon the Court's dismissal of its other claims (because no controversy will remain to be adjudicated), and it should be dismissed along with Plaintiff's other claims. *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (declaratory relief claim is moot when there is no "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"), quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

**VIII. <u>CONCLUSION</u>**

The time-based defenses that bar Plaintiff's copyright and Lanham Act claims cannot be cured by amendment. Nor can amendment overcome the fact that there

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850

are no actionable similarities between Plaintiff's works and the *Terrifier* Films. Consequently, all of Plaintiff's claims should be dismissed without leave to amend.

DATED: October 2, 2026

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP

By: /s/ P. Millett

Patricia A. Millett
Attorneys for Dark Age Cinema, LLC, Art the Clown, LLC

KINSELLA HOLLEY ISER KUMP STEINSAPIR LLP
11766 WILSHIRE BOULEVARD, SUITE 750
LOS ANGELES, CALIFORNIA 90025
TEL 310.566.9800 • FAX 310.566.9850